opinion of the court
Edward J. McLaughlin, J.
After custody and guardianship of a child has been awarded to an authorized agency in an abandonment proceeding pursuant to section 384-b (subd 4, par [b]) of the Social Services Law, a court should not exercise its jurisdiction over a petition filed by a private person which seeks mere custody of that child. To exercise jurisdiction would circumvent the clear public policy of this State, which is, that a permanent home should be found for every child who has been determined to be abandoned and the child’s custody and guardianship awarded to the commissioner.
I. FACTS
Now before the court is a petition filed by the maternal grandmother of two children, Danielle and Jermaine Antonio Quarles, which seeks their custody. Prior to this proceeding the two children were found by the court to be *1045 abandoned. (Social Services Law, § 384-b, subd 4, par [b]; subd 5.)
The subject children have a long history before this court.[1] Danielle came into the care and custody of the Commissioner of Social Services on January 6,1977 as the result of being placed in foster care when her mother was arrested for the crime of prostitution. Subsequently, the child was adjudicated neglected.[2]
Jermaine Antonio came into the care and custody of the commissioner on February 7,1978, shortly after birth. This child was found to be neglected also. The basis of the adjudication of neglect was Danielle’s previous adjudication of neglect and an adjudication of abuse of another sibling, Ondalee, who is not involved in the present custody proceeding.[3]
In its finding of fact in the abandonment proceeding[4] on March 28,1980, the court found that the children’s mother was in the Onondaga County Penitentiary from March of 1978 until her release on November 19, 1978. She did not contact the children during this time although she was advised of her rights by the Department of Social Services. After her release from the penitentiary, the Department of Social Services attempted to re-establish the parental relationship with the mother and her children. The department’s efforts were unsuccessful. The mother failed even to appear at the abandonment proceedings although notice was given to her. The alleged father of the children did not maintain any contact with the children at any time. Nor did he appear at the abandonment proceedings although notice was given to him. On the basis of these facts the court found the children to be abandoned (Social Services Law, § 384-b, subd 4, par [b]) and awarded custody and guardianship to the Commissioner of Social Services, thus freeing them for adoption.[5] (Social Services Law, § 384-b.) Upon the initiation of the instant proceeding an order to show cause was *1046 signed restraining the commissioner from taking any further action on the adoption of the children until the pending matter was resolved.
II. LAW
A. Standing
Both parties to this proceeding frame their argument in terms of the grandmother’s standing or lack of standing to bring a custody petition.[6] Under section 651 of the Family Court Act, any person who has an interest in the welfare of a child has standing to sue for the custody of the child. (Matter of Humphrey v Humphrey, 103 Misc 2d 175.) Thus, the standing of the grandmother here to bring a custody petition is not in issue.
B. The Role of the State in Abandonment Proceedings
The right of a natural parent to bring up a child without interference from the State has long been recognized as a fundamental liberty interest. (Pierce v Society of Sisters, 268 US 510, 534-535; Meyer v Nebraska, 262 US 390,399.) Only when a natural parent abandons a child, neglects a child, is proven to be unfit, or gives specific consent to such action may the State intervene and terminate the parents’ right to the custody and guardianship of the child. (Matter of Sanjivini K., 47 NY2d 374, 382; see Matter of Leon RR, 48 NY2d 117,124.) In short, it is only when the parent through some act or omission evokes the concern of the State for the welfare of the child that the State may exercise its power of parens patriae and intervene in the legal relation between parent and child.
*1047 The concept of parens patriae is an ancient concept of the English common law. (3 Blackstone’s Comm, p 426.) Under the concept the Crown, or State, was invested with the supreme guardianship and supervision of infants. Courts of equity acquired jurisdiction over the persons and estates of minors. (Eyre v Shaftsbury, 2 Peere Williams 103 [1772].) “The doctrine that the state as parens patriae of the people who compose it for the purpose of the care, protection, discipline, and reform of those of its citizenship, whether dependents, lunatics, minors, or criminals needing these offices * * * became a part of the British system of government and of jurisprudence, and the jurisdiction of courts of equity over minors thus firmly established in the English law passed to this country upon the establishment of courts of law and equity in its various states, and came regularly into our system of jurisprudence upon the consolidation of these courts” (Matter ofDaedler, 194 Cal 320,325). (See NY Const, art I, § 14; CPLR 103.)
In a permanent neglect proceeding, it is the clear intent of the State, speaking through the Legislature, to “free” for adoption a child whose natural parents are unable to provide nurture, sustenance, and care, so that the child may find a permanent home and escape the uncertainty of perpetual foster care. (Family Ct Act, art 6; Social Services Law, § 384-b, subd 1, par [a], cl [i].)[7] The State created a legal mechanism to that end whereby the Commissioner of Social Services, essentially, acts as a trustee for or custodian of a child pursuant to an order of the court. The court may order the commissioner to meet conditions it deems proper (Family Ct Act, § 634), such as to diligently seek an adoptive home for the child. This statutory scheme is consistent with the doctrine of parens patriae.
C. Analogy to Bankruptcy Proceedings
There is an analogy to be made between abandonment proceedings and bankruptcy proceedings. There is so because the statutory duties of the Commissioner of Social *1048 Services following an abandonment proceeding are more nearly akin to the duties of a trustee in bankruptcy than they are to the traditional duties assigned to a guardian. An ordinary guardian, it is true, has a fiduciary relationship with his ward, but he does not hold title to any property. Rather, he enjoys only certain powers and duties to deal with the property for the benefit of the ward, the ward having title to the property. (See Restatement, Trusts 2d, § 202, comment gj Nor is the commissioner a trustee in the traditional sense of that word, for no actual trust is established when a child’s custody and guardianship is awarded to the commissioner. (See 2 Sainer, Substantive Law of New York, § 21-8 [1980].)
A trustee in bankruptcy is an officer of the Bankruptcy Court, vested with title to certain properties with a duty to perform tasks that are necessary to achieve the objectives of the Bankruptcy Law. (11A Collier, Bankruptcy, § 7.001 [14th ed].) Here the Commissioner of Social Services is the guardian of the abandoned child only so that he may carry out the statutory objectives of the Legislature — to find a permanent home for a child whose parents are unable to or do not wish to fulfill their parental obligations. (Social Services Law, § 384-b.) Just as a bankruptcy proceeding is commenced only upon the voluntary or involuntary act of the bankrupt person (US Code, tit 11, ch 3, subch 1), so also an abandonment proceeding is commenced only when the parent of a child engages in an act or omission that triggers the concern of the State as parens patriae for the child’s welfare. (Matter of Sanjivini K., supra.) When such an event occurs and abandonment is found, the relationship between the parent and child has broken down — it is ruined. (See Black’s Law Dictionary [4th ed], Bankrupt.) Thus, just as the breakdown of the financial condition of a debtor initiates the need for the State in the form of the court to intervene and appoint a trustee to hold the debtor’s assets for his creditors (US Code, tit 11, ch 3, subch 2), where the child and parents’ relationship irreparably breaks down, the State in the form of the abandonment proceeding intervenes, and the subsequent order of the court awarding custody and guardianship of the child to the Commissioner of Social Services is so that the commissioner can legally *1049 hold the child while seeking to find an adoptive home. This role of the commissioner is further borne out by the statutory scheme that allows the court to make such conditions as it deems proper in its order awarding custody and guardianship to the commissioner. (Family Ct Act, § 634.)
A trustee in bankruptcy is bonded so that should there be a breach of the trustee’s duties, the debtor’s creditors would not suffer harm. (11A Collier, Bankruptcy, §7.006 [14th ed].) Then too, a trustee may invest the moneys he is administering only in specially insured banks without posting a special bond. (US Code, tit 11, § 345.) Reasoning by analogy, the commissioner since he is a public official charged with insuring the welfare of the child (Social Services Law, § 384-b) (and not a trustee of real and personal property) does not need to post a bond, since his duty is clear — it is to carry out his statutory obligation to see that a permanent home is found for the child in his care. To not do so would be to abrogate his duties and place him in a situation similar to that in which a trustee in bankruptcy breaches his trust. (See American Sur. Co. of N. Y. v First Nat. Bank, 141 F2d 411, cert den 322 US 754.) A breach of trust is defined as “a violation by the trustee of any duty which as trustee he owes to the beneficiary.” (Restatement, Trusts 2d, § 201.) Here, the commissioner owes a duty to the abandoned child to acquire a permanent home for the child.
Were this not so, abandoned children would always be subject to the well intended, but often misguided efforts of those persons with a concern for the child, but with either an inability or a lack of desire to provide the child with a permanent home. The child, therefore, would be transferred from the uncertainties of perpetual foster care to the uncertainties of continually changing custody determinations. Such a Hobson’s choice is not to be construed from the statutory design of the legislation designed to deal with homeless children.
D. Adoption as the Proper Procedure
By adhering to the statutory scheme, adoption clearly is the proper procedure for anyone to follow who has an interest in seeking custody of a child whose custody and *1050 guardianship has been transferred to the commissioner (Domestic Relations Law, art 7). Adoption is the only way that the State can assist children who have been found to be abandoned in finding a permanent home.
E. The Commissioner’s Consent
The court recognizes that should the grandparent here, or any other stranger, seek to adopt the child, the consent of the commissioner will be required. (Domestic Relations Law, § 111, subd 1, par [d].) Since adoption was unknown at the common law, it is purely a statutory proceeding. (51 ALR2d 498.) Thus, a person seeking to adopt a child whose guardianship and custody has been awarded to the commissioner or other authorized agency has no other course but to follow the statutory requirements and obtain the consent of the authorized agency if they are to adopt a child. There are circumstances in which an adoption may be carried out without the consent of a parent. (Domestic Relations Law, § 111, subd 2.) There is no equivalent provision, however, to circumvent the necessity of obtaining consent to an adoption by an authorized agency. Should an action seeking adoption of children whose guardianship and custody has been awarded to the commissioner be commenced and the commissioner withhold his consent, it would appear that the petitioner in such an adoption proceeding would have the right to commence a proceeding pursuant to CPLR article 78 and to have a court determine whether the commissioner has an appropriate basis for withholding such consent.
F. Dismissal
For the reasons discussed in this opinion, the court herewith dismisses the grandmother’s petition for custody. To allow the petitioner to proceed would be to defeat the public policy of New York.
G. Visitation
This decision in no way effects the right of the grandmother to seek visitation with her grandchildren. This is so either while the children are with the Commissioner of *1051 Social Services (Domestic Relations Law, § 72), or while they are with the adoptive parents, should those adoptive parents be different from the grandparent. (Matter of Scranton v Hutter, 40 AD2d 296; see Matter of Lachow v Barasch, 57 AD2d 896.)

. See Family Court, State of New Y ark, County of Onondaga, Docket Nos. N-251-76, N-42-78,B-41-79, B-42-79.

. Family Court, State of New York, County of Onondaga, Docket No. N-251-76.

. Family Court, State of New York, County of Onondaga, Docket No. N-42-78.

. Family Court, State of New York, County of Onondaga, Docket Nos. B-41-79 and B-42-79.

. Family Court, State of New York, County of Onondaga, Docket Nos. B-41-79 and B-42-79.

. Unlike many other articles of the Family Court Act (§§ 422,522,733,822), article 6 is silent as to who may initiate a custody proceeding. Family Courts have found, however, that grandmothers do have standing to bring custody proceedings. (See, e.g., Matter of Tamara I., 91 Misc 2d 995 [Family Ct, Kings County, 1977]; Matter of Johnstone v Shuart, 91 Misc 2d 272 [Family Ct, Rockland County, 1977].)
While in some cultures, such as the Navajo, for instance, “custody traditionally lies with grandparents as well as parents” (Leighton and Leighton, The Navajo Door, 1944, as cited in Navajo Grandparents — “Parent” or “Stranger” — A Child Custody Determination, 9 New Mexico L Rev 187, 190), New York Statutes specifically grant custody rights only to the parents of children. (Domestic Relations Law, § 240.) Grandparents in New York merely have a statutory privilege to seek visitation. (Domestic Relations Law, § 72; Lo Presti v Lo Presti, 40 NY2d 522; Foster and Freed, Grandparent Visitation: Vagaries and Vicissitudes, 23 St. Louis ULJ 643.) Thus, a grandparent seeking custody has no greater right to assert than does any other “stranger” who has taken an interest in a child. (Cf. People ex rel. Kropp v Shepsky, 305 NY 465.)

 “It is the intent of the Legislature in enacting this section to provide procedures not only assuring that the rights of the natural parent are protected, but also, where positive, nurturing parent-child relationships no longer exist, furthering the best interests, needs, and rights of the child by terminating parental rights and freeing the child for adoption.” (Social Services Law, § 384-b, subd 1, par [b].)