*301 OPINION OF THE COURT
John D. Capilli, J.
On July 11, 1984, Cassandra C., born June 1, 1984, was removed from the care of her parents, Charles and Eleanor C., and placed in foster care by the Nassau County Department of Social Services, pursuant to Family Court Act § 1024. On July 12, 1984, the Department of Social Services filed a neglect petition under docket No. N-250-84, alleging that Cassandra is a neglected child as defined by Family Court Act § 1012, in that: "On or about July 10, 1984, respondent-father beat said child’s half sibling, Lawrence P., to a degree that it caused said half sibling death on July 11, 1984. Respondent-father beat said half sibling with such force and effect to cause said half sibling to hemorrhage into his abdomen which was a result of lacerations of the mesentery, with a rupture of the small bowel. In addition, said half sibling had multiple rib fractures on both sides. Respondent-mother was present while said half sibling was being beaten and failed to take any steps whatsoever to prevent it from happening or continuing. It is most likely that said child will be treated in a similar manner.”
By order of this court dated July 18, 1984, temporary custody of Cassandra was placed in the Department of Social Services. By amended temporary order of October 26, 1984, temporary custody was continued in the Department of Social Services, with visitation for the parents to be arranged by the Department. On March 28, 1985, the court ordered the Department of Social Services to arrange visitation for the respondents with Cassandra for one hour each week in the Nassau County Correctional Center. There was a final disposition of the neglect petition re: Eleanor C., on January 23, 1986. On that date the court, on consent, adjudged Cassandra to be an abused child within the meaning of Family Court Act article 10, based on the conviction of Eleanor C. of criminally negligent homicide in the County Court and ordered that Cassandra be placed in the custody of the Nassau County Department of Social Services for a period of 18 months, with visitation to the mother arranged by the Department at the Nassau County Correction Center or any other place of confinement. The order further provided that Eleanor C. may make application for custody of Cassandra upon her release. (The order, dated Jan. 23, 1986, was corrected by order dated June 3, 1986, on the court’s own motion, to provide that *302 Cassandra is a neglected child, rather than an abused child.) On March 18, 1986, there was a final disposition of the neglect petition re: Charles C. Mr. C. withdrew his denial to the petition and the court made an affirmative finding that Cassandra was a neglected child, based upon Mr. C.’s criminal conviction for murder in the second degree and manslaughter in the first degree. The respondent father waived a dispositional hearing and custody of Cassandra was placed in the Department of Social Services for a period of 18 months.
Shortly after the emergency removal and the commencement of the above-mentioned neglect proceeding, Alberta V., Cassandra’s paternal grandmother, filed a petition, dated July 27, 1984, seeking custody of Cassandra. The petition first came on to be heard on August 6, 1984. On that date, Eleanor C. was present with her attorney, Claire Weinberg. Charles C. was present with his attorney, Nicholas O’Shea. Deputy County Attorney Michael Fogarty was present as counsel for the Department of Social Services. Alberta V. was present with her attorney, Lewis Edelstein. J. Steven Reynolds was assigned by the court as Law Guardian for Cassandra. The parties, their respective counsel and the Law Guardian executed a stipulation consenting that the court order "an investigation by the Nassau County Probation Department into all of the pertinent facts and circumstances, including psychiatric and psychological examinations of any of the parties and or other persons with whom this matter may be concerned”. A hearing on the custody petition commenced on August 12, 1985 and continued on August 14, 1985, August 16, 1985 and January 23, 1986. Nathan Edelstein, of counsel to Lewis Edelstein, represented the petitioner at the hearing. On October 31, 1985, Stephen Moser replaced Nicholas O’Shea as counsel for Charles C. The hearing concluded on March 18, 1986, at which time the court reserved decision and directed the Department of Social Services to provide the court with an updated social summary as to Cassandra’s progress in foster care. The updated social summary was received by the court on May 19, 1986.
The petitioner testified on her own behalf and called Dr. Robert P. Feldman, a psychiatrist and Dr. Allen Reichman, Senior Consulting Psychiatrist, Nassau County Department of Mental Health, as witnesses. A home study of the V. family, conducted by the Department of Social Services of New Brunswick, Canada, was received in evidence as petitioner’s exhibit No. I. The mental health evaluation made by Dr. Reichman *303 pursuant to the stipulation executed by the parties and their respective attorneys was received in evidence as petitioner’s exhibit No. II and a report of interviews with the V. family conducted by Dr. Feldman was placed in evidence as petitioner’s exhibit No. III.
Mrs. V. testified that she resides with Joseph V., her second husband; Heather V., their eight-year-old daughter; and Thomas C., her son, in New Brunswick, Cananda. The V.’s married in 1976 and in 1981 moved to a four-bedroom home on a farm in Canada. Their home is 17 hours by car from Nassau County. Mr. V. is retired from the New York City Sanitation Department and presently farms as a hobby. The petitioner stated that the V.’s are in good health. Regarding Charles C., Mrs. V. advised the court of the history of her son’s difficulties, which began when he was seven years old.
Dr. Feldman testified that he interviewed the petitioner, her husband, their daughter, Heather, and Mrs. V.’s daughters, Laura and Marion. He told the court that, in his opinion, the petitioner would, without a doubt, be a good custodian for Cassandra. He stated that Cassandra’s best interests would be served if she were raised in a kinship home, as opposed to foster care.
Dr. Reichman testified that, in his opinion, custody of Cassandra should not be granted to the petitioner. Dr. Reich-man’s recommendation was based on his psychiatric evaluation of Mr. and Mrs. V. and his review of the Canadian social services report, as well as his review of the records of the Nassau County Division of Forensic Services regarding the C. family. Dr. Reichman recognized that the V.’s had been given an extremely positive evaluation by the Department of Social Services in Canada, but advised the court that this evaluation did not take into account the fact of the C. family past history. Dr. Reichman’s written report indicates that the C. family was known to Nassau County Child Protective Services as far back as 1966 and that the records repeatedly indicate severe physical abuse by Mrs. V. (then Mrs. C.). His report further recited that at age 12 Charles C. was severely abused. Charles indicated that his mother had beaten him with a wooden chair and burned him with matches. Mrs. V. had advised Dr. Reichman that Charles was abused by his father, not by her. Dr. Reichman diagnosed Mrs. V. as having a mixed personality disorder, with a combination of dependent, aggressive and immature features. He felt that, despite the positive Canadian social services report, the documentation of "enormously *304 pathological behavior” that Mrs. V. displayed toward her own child would make it "unwise to tempt fate by allowing her to have custody of her grandchild”.
At the conclusion of the testimony, counsel for Charles C. indicated that his client supported the petitioner’s application for custody of Cassandra. Counsel for Eleanor C. opposed the petition in her client’s behalf. The Deputy County Attorney called no witnesses on behalf of the Department of Social Services. Neither Charles C. nor Eleanor C. called any witnesses or testified.
The brief updated social summary prepared by the Nassau County Department of Social Services, dated May 19, 1986, states that Cassandra was placed in foster care when she was one month old and has remained in the same foster home to date. She is a healthy, bright, adorable child, who is doing "exceptionally well in the foster home where she is receiving an abundance of good care and love”. The report also indicates that Eleanor C. was released from Bedford Hills Correctional Facility in May 1986 and that visitation between Eleanor C. and Cassandra was scheduled to commence on May 21, 1986.
After consideration and review of the testimony, the documentation received in evidence, the disposition under docket No. N-250-84, and all prior proceedings held herein, the court makes the following findings of fact and conclusions of law:
The standard applied in proceedings to determine custody as between two parents is the "best interests of the child” (Friederwitzer v Friederwitzer, 55 NY2d 89; Eschbach v Eschbach, 56 NY2d 167; Matter of Krom v Comerford, 57 NY2d 704). However, when a nonparent seeks custody as against a parent, as in the case herein where the petitioner paternal grandmother seeks custody as against the respondent mother, the nonparent must establish the existence of extraordinary circumstances before the court can reach the issue of the child’s best interests. (Matter of Bennett v Jeffreys, 40 NY2d 543; Matter of Merritt v Way, 58 NY2d 850.) In this proceeding, where there has been an adjudication against both parents that Cassandra is a neglected child and custody has been placed in the Department of Social Services for a period of 18 months, it is clear that extraordinary circumstances exist in that the court has determined that for the duration of the dispositional order made in the neglect proceeding the parents would not be fit to care for their child. Extraordinary circumstances having been established by the adjudication in the *305 neglect proceeding, the court must determine custody between the petitioner grandmother and the respondent mother by assessing Cassandra’s best interests. The court must, further, determine the appropriate standard to be applied in a custody proceeding between a nonparent and an authorized agency to which custody of a child has been entrusted for a limited period of time pursuant to an adjudication that the child is neglected. The law is clear in that once custody and guardianship of a child has been placed in an authorized agency and the child freed for adoption by virtue of permanent surrender or termination of parental rights, the court may not exercise jurisdiction of a custody petition by a nonparent, in that adoption has become the exclusive procedure by which to obtain custody of the child. (Matter of Peter L., 59 NY2d 513; Matter of Smith v Lascaris, 106 Misc 2d 1044.) This court, however, has been unable to uncover a single reported case which addresses the issue of the standard to be applied by the court when a nonparent seeks custody of a child who has not been freed for adoption, but has been placed in the custody of an authorized agency for a limited period of time due to parental neglect. The court finds that the appropriate standard to be applied in a custody proceeding between the grandmother petitioner herein and the Nassau County Department of Social Services, respondent, an authorized agency in which custody of Cassandra has been placed for 18 months pursuant to a neglect adjudication is in the best interests of the child. The court further finds that there is a rebuttable presumption that the child’s best interests lie in continuing custody in the authorized agency.
The Legislature of the State of New York has determined that it is generally in a child’s best interests "to remain with or be returned to the natural parent because the child’s need for a normal family life will usually best be met in the natural home” (Social Services Law § 384-b [1] [a] [ii]). The "state’s first obligation is to help the family with services to prevent its break-up or to reunite it” (Social Services Law § 384-b [1] [a] [in]). Once a child is placed in the custody of the Department of Social Services pursuant to a neglect proceeding, the Department is obligated to make "diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child” (Social Services Law § 384-b [7] [a]) by:
"(1) consultation and cooperation with the parents in devel *306 oping a plan for appropriate services to the child and his family;
"(2) making suitable arrangements for the parents to visit the child * * *
"(3) provision of services and other assistance to the parents, except incarcerated parents, so that problems preventing the discharge of the child from care may be resolved or ameliorated;
"(4) informing the parents at appropriate intervals of the child’s progress, development and health” (Social Services Law § 384-b [7] [f]).
The goal is to assist the parent to correct the conditions that led to the removal, so that the family can be reunited. (Matter of Nathaniel T., 67 NY2d 838; Social Services Law § 384-b [7] [f] [3].) The law is very clear that parental rights may not be permanently terminated unless the appropriate authorized agency has made diligent efforts to reunite the parent and child. (Matter of Sheila G., 61 NY2d 368; Matter of Jamie M., 63 NY2d 388.)
Based upon the legislative determination that a neglected child’s best interests lie in being reunited with his parent and the legislative mandate that the agency entrusted with the child’s care make diligent efforts toward that end, the court finds that there is a presumption that a neglected child’s best interests are served by continuing custody in the agency, rather than in transferring custody to a grandparent or other person. The presumption in favor of continuing custody in an authorized agency is rebuttable upon a showing that rehabilitative efforts by the agency would not be in the child’s best interests. (See, Social Services Law § 384-b [7] [a].) Only upon such a showing should a court consider transferring custody of a neglected child from an authorized agency and thereby absolve the agency of its statutory obligation to provide the child and the parent with rehabilitative and support services.
In the instant proceeding, there has been no such showing. Eleanor C. was only recently released from confinement and the Nassau County Department of Social Services has only just begun to discharge its statutory duty to assist her in planning for the return of her child. Supervised visitation has been scheduled. There has been no proof herein that further efforts by the Department of Social Services pursuant to Social Services Law § 384-b would not be in Cassandra’s best interests. Further, a transfer of custody to the petitioner would not *307 only deprive Eleanor C. and Cassandra C. of the benefits of statutorily mandated rehabilitative services, but would, in effect, be a de facto "permanent termination” of Eleanor C.’s parental rights. The petitioner resides 17 hours away from Nassau County by car and an award of custody to the petitioner would preclude Eleanor C.’s right to exercise meaningful, ongoing visitation and to maintain a relationship with Cassandra.
Visitation is a right shared jointly by a child and a noncustodial parent. (Weiss v Weiss, 52 NY2d 170.) Eleanor C. has vigorously pursued visitation rights. During the pendency of the neglect and custody proceeding, the Department of Social Services was directed to afford her weekly visitation with Cassandra. The final order of disposition in the neglect proceeding directs the Department of Social Services to arrange visitation between Cassandra and Eleanor C. during the mother’s incarceration. Upon Eleanor C.’s release from confinement, supervised visitation was scheduled. The court finds that visitation between Cassandra and her mother, under conditions to be determined by the Department of Social Services, is in Cassandra’s best interests and is vital toward achieving the statutorily mandated goal of safely reuniting mother and child. Award of custody to the paternal grandmother herein, who resides at a location so distant as to foreclose any meaningful visitation, would not be in Cassandra’s best interests.
Further, upon review of the conflicting expert testimony, the court finds that the petitioner failed to establish that she would be a fit custodian for Cassandra. While the Department of Social Services in New Brunswick, Canada, made an extremely positive evaluation of petitioner and her ability to care for Cassandra, this assessment was made without knowledge of the history of physically abusive behavior by petitioner against her own son, Cassandra’s father, Charles C. Although Dr. Feldman advised the court that he saw no psychiatric reason why custody should not be awarded to the petitioner, his opinion was based on interviews with the petitioner and members of her family. He made no psychiatric diagnosis. Dr. Reichman diagnosed Mrs. V. as displaying a mixed personality disorder, with a combination of dependent, aggressive and immature features. He notes that she displayed little affect even when discussing the fact that her son was charged with second degree murder. Dr. Reichman advised the court that the "enormously pathological behavior” *308 displayed by Mrs. V. toward Charles C. raised doubt as to her fitness to care for Cassandra, despite the present picture of apparent domestic stability of her household. In accord with Dr. Reichman’s independent, court-ordered evaluation and psychiatric diagnosis, the court finds that the petitioner has not established that she would be a fit and proper custodian for Cassandra and that Cassandra’s best interests, therefore, require continuation of custody in the Nassau County Department of Social Services. Petitioner’s petition seeking custody of Cassandra is dismissed.