OPINION OF THE COURT
Herbert B. Ray, J.
Mescal and Peter F., maternal aunt and her husband, seek physical and legal custody of l-year-10-month-old Sierra H. and her 11-month-old brother, Joshua H. The children were born out of wedlock to Linda H., a respondent in neglect *909 proceedings concerning these two children. Both children are in the custody of the Broome County Department of Social Services and living in foster homes.
The unusual threshold issues presented in this case involve whether the F.s’ petition for custody is proper, and, if so, what is the appropriate procedure where the eldest child has been determined to be a neglected child and a second child protective proceeding has been filed concerning her brother. The Department acknowledges that Mr. and Mrs. F. have the right to request intervention pursuant to Family Court Act § 1035 (e) with respect to Joshua, although it is argued that such intervention is not appropriate and should not be granted. It is further argued that petitioners are foreclosed from seeking intervention with respect to the elder child because neglect proceedings have concluded. In fact, this court has directed the filing of a permanent neglect petition[1] against mother concerning Sierra because, inter alia, she has been in foster care since she was two months old — she is now almost two years old.
Petitioners assert that pursuant to "Section 651 of the Family Court Act, any person who has an interest in the welfare of the child has standing to sue for the custody of the child.” This simple statement of the law ignores the complicated procedural background of this case. At least six different Family Court proceedings have already been instituted during the young lives of these children concerning these children. Do petitioners suggest that the court should consider their petition for custody prior to the other actions? Is it not appropriate to also consider the various statutorily mandated responsibilities of Social Services once a child has been entrusted to its care after an adjudication of neglect?
A review of the prior litigation is necessary to address these issues. Prior to Joshua’s birth a petition was filed by the Broome County Department of Social Services alleging that John S. was the father of the child to be born to Linda H. S. *910 denied the allegations. He appeared for blood tests which indicated a probability of paternity of 97.61%. He did not appear for further proceedings even though he had been repeatedly warned by his own counsel and the court that it was his duty to keep the court apprised of his whereabouts. A warrant was issued for his arrest at docket No. P-412-86 on November 18, 1987.[2]
On June 8, 1986 when Sierra was one month old she was temporarily removed from her mother’s custody. Two days later the neglect petition was filed and 10 days later mother Linda H. admitted certain allegations. She has never been returned to her mother’s custody. On November 10, 1987, Social Services was directed to file appropriate proceedings to free the child for adoption.
No individual has been adjudicated to be Sierra’s father. The original neglect petition alleges that Robert E. F. is her father. The subsequent petition for extension of placement specifies at docket No. N-ll-86 that the child’s father is unknown.
On August 11, 1987 an article 10 proceeding was initiated by Social Services against Linda H. alleging that her son, Joshua, was neglected. Mother consented to the entry of a finding of neglect admitting that certain factual allegations were true. On September 15, 1987, the Department was directed to supervise Linda H. for a period of 12 months. Ms. H. was directed to "cooperate with Broome County Social Service workers including making herself and her child available to meet with caseworkers * * * attend parenting classes, accept parent aide services * * * [and] attend counselling”.
A second neglect petition concerning the child, Joshua, was filed on November 13, 1987 by Department of Social Services. His physical custody had been placed with the Department the previous day. Mother admitted to certain neglect allegations on January 5, 1988 and temporary custody of Joshua was continued with the Department at docket No. N-176-87.
On December 15, 1987, Peter and Mescal F. filed a petition for appointment of guardian of person of the infants, Sierra *911 and Joshua H. The petition alleged that the children had no property and that appointment was necessary "[t]o protect and preserve the legal rights of said infant.” On that same date Mr. and Mrs. F. also filed a petition for custody of Sierra and Joshua H. The petition alleged, inter alia, that the children "can grow up in family atmosphere with people who care about them”. Counsel was directed to file legal briefs on the issues raised. The most recent brief was filed by attorney Esworthy, Jr., on January 5, 1988. In addition the court received the preliminary home study of the F. residence as investigated by the Sullivan County Department of Social Services on January 26, 1988.
Initially the applicability of the recently amended intervention law will be reviewed. As recommended by counsel for Linda H. and in the interest of fairness the court will consider the filing of the custody petition[3] as a request for intervention pursuant to Family Court Act § 1035 (e). This law provides that: "[t]he child’s adult sibling, grandparent, aunt or uncle not named as respondent in the petition, may, upon consent of the child’s parent appearing in the proceeding, or where such parent has not appeared then without such consent, move to intervene in the proceeding as an interested party intervenor for the purpose of seeking temporary or permanent custody of the child, and upon the granting of such motion shall be permitted to participate in all arguments and hearings insofar as they affect the temporary custody of the child during fact-finding proceedings, and in all phases of dispositional proceedings. Such motions for intervention shall be liberally granted.”
Case law interpretation of the statute indicates that requests for intervention are presented to the discretion of the court. (Matter of Ricky P., 135 Misc 2d 28 [1987].) It is premised on the respondent parents’ consent. (Supra.) If granted, the intervenor does not have full party status but is specifically limited to " 'seeking temporary or permanent custody of the child.’ ” (Matter of Holmes, 134 Misc 2d 278, 279 [1986].)
"Issues of permanent custody are determined after a dispositional hearing. (Family Ct Act § 1052.) The intervenor and his counsel may attend all fact-finding hearings but may not participate, except for argument or hearings relating to the *912 remand, parole or temporary custody of the child. He may participate with full party rights in such arguments and hearings during the fact-finding stage and as a party with full rights at disposition.” (Supra, at 279-280.) After dispositional hearing the court may decide to place the child with the intervenors. The policy for such placement was recognized in the case of Matter of Ricky P. (supra) as follows: "The drafters intended that a family member acceptable to the respondent parent could come forward as a potential custodian. The court must then make an informed judgment about a prospective intervenor’s ability 'to assume care of the child’, based on available information about him or her.” (Supra, at 32.)
It is apparent to this court that each placement must be considered on a case-by-case basis. The court must give deliberate attention to the responsibility of Social Services and the legal system to encourage and strengthen the parental relationship and to encourage the parent to substantially and continuously maintain contact or plan for the future of the child. (See generally, Social Services Law § 384-b.) The statement of legislative findings and intent set forth in section 384-b (1) (a) (iii) provides that "the state’s first obligation is to help the family with services to prevent its break-up or to reunite it if the child has already left home”.
Therefore, even if the respondent parent consents to temporary or permanent custody with the intervenor, if such placement would detrimentally affect the legislative policy of strengthening the parental relationship, such placement could be rejected by the court. As applied to the instant proceeding, petitioners are appropriate parties to seek intervention with respect to both children. Even though no current neglect proceeding is pending which concerns Sierra H., it is appropriate to allow petitioners to intervene. Sierra’s placement has been continued by extension order. Her placement continues to be governed by article 10 of the Family Court Act in which the intervention section is contained.[4]
With the question of intervention resolved, the most difficult issue remains: whether this court has authority to entertain an application by a nonparent for permanent custody of neglected children entrusted to the care and custody of Social *913 Services. This court has not found any appellate authority on this issue.
By decision dated June 4, 1986, prior to the enactment of Family Court Act § 1035 (e), the Family Court of Nassau County did consider and hear such a request. In the case of Alberta V. v Charles C. (132 Misc 2d 300 [1986]), the court on consent adjudged the subject child as neglected. Custody of the child was placed in the Department of Social Services for a period of 18 months. Shortly after the emergency removal and commencement of the neglect proceeding paternal grandmother filed a petition seeking custody of the child. A Probation Department investigation was conducted. Hearing on the custody petition was concluded on the same day as the final disposition of the neglect petition concerning the child’s mother.
In citing the noted case of Matter of Bennett v Jeffries (40 NY2d 543), the Family Court found the existence of extraordinary circumstances based upon the neglect adjudication. Thereafter the court applied a "best interests” standard of review and a "rebuttable presumption that the child’s best interests lie in continuing custody in the authorized agency.” (Alberta V. v Charles C., supra, at 305.) The rationale stated for this presumption was based upon an analysis of legislative policy.[5]
A review of the chronology of the pleadings and hearings in this case and the application of the "presumption” by the court indicates a precursor to the intervention statute. The custody petition and request for permanent custody contained therein was dealt with as if it were a request for intervention pursuant to section 1035 (e) of the Family Court Act. This court has not found any reported decisions in which a court considered a custody petition filed subsequent to an article 10 proceeding. This is logical because section 1035 (e) sets forth a specific method of seeking permanent custody in such circumstances.
A review of the statutory framework indicates that the Legislature envisioned section 1035 (e) as the exclusive method of seeking permanent custody in such cases. What reason would exist for such a specific procedural and substantive statute if this section of the law could be circumvented by the simple filing of a custody petition naming Social Services *914 as a respondent? This court also recognizes that different policies and considerations are present in cases involving neglected children placed in the custody of Social Services. A request for permanent custody under such circumstances must carefully weigh the various and sometimes contradictory policies involved.
The court holds that the children’s best interests will be served by limiting petitioners’ remedy to seeking intervention. This will achieve petitioners’ goal of pursuing permanent custody and provide an orderly basis upon which to proceed. The custody and guardianship petitions will be dismissed as they are superfluous and not in accordance with the Family Court Act as interpreted herein.
In accordance with this decision the following is entered:
ORDER
1. The petition for appointment of guardian of person filed on December 15, 1987 at dockets Nos. V-1084 and 1085-87 is dismissed.
2. The petition for custody filed on December 15, 1987 at dockets Nos. V-1052 and 1053-87 is dismissed.
3. Peter and Mescal F.’s request for intervention to seek temporary or permanent custody of Sierra H. is granted at docket No. N-lll-86 effective December 15, 1987.
4. Peter and Mescal F.’s request for intervention to seek temporary or permanent custody of Joshua H. is granted at dockets Nos. N-122-87 and N-176-87 effective December 15, 1987.
5. The Law Guardian is directed to file a written report with the court on or before March 15, 1988 concerning petitioners’ request for temporary custody/visitation.
6. Dispositional hearings on the adjudication of the neglect of Joshua H. (dated Jan. 5, 1988 at docket No. N-176-87) is set for April 5, 1988 at 1:30 p.m. to 5:00 p.m. and, if necessary, April 14, 1988 at 1:30 p.m. to 5:00 p.m., Broome County Family Court — Room 500 A. Hearing on Peter and Mescal F.’s request for custody of Sierra H. shall be heard at the same time.
7. The Broome County Department of Social Services is granted an extension of time in which to file the permanent neglect proceeding concerning Sierra H. until such time as *915 hearing is concluded on petitioner’s request for permanent custody.
8. All pretrial discovery motions must be filed in writing with this court on or before March 15, 1988. Pretrial conference is scheduled for March 21, 1988 at 10:30 a.m. (30 minutes).

. "The law is clear in that once custody and guardianship of a child has been placed in an authorized agency and the child freed for adoption by virtue of permanent surrender or termination of parental rights, the court may not exercise jurisdiction of a custody petition by a nonparent, in that adoption has become the exclusive procedure by which to obtain custody of the child. (Matter of Peter L., 59 NY2d 513; Matter of Smith v Lascaris, 106 Misc 2d 1044)” (Matter of Alberta V. v Charles C., 132 Misc 2d 300, 305 [1986]). Petitioners submit that they wish to adopt the children but have not filed adoption proceedings.

. Petitioners have named S. as a party respondent to the instant proceedings but have not filed an affidavit of service on him. The court would entertain a motion to strike his name from the caption as he is not a necessary party to these proceedings. The court would also entertain a motion to withdraw or dismiss the paternity petition by an appropriate party.

. Petitioners have not requested intervention by pleading, oral motion or legal memorandum.

. At such time as the Department would file a permanent neglect petition pursuant to Social Services Law, petitioner's remedy would be limited to application pursuant to section 1062 of the Family Court Act— petition to terminate placement.

. This court has recognized and referred to such policy in its discussion of the availability of intervention in this case.