OPINION OF THE COURT
Lewis R. Friedman, J.
The enactment of Real Property Law § 234 in 1966 (L 1966, *58 ch 286) engendered a substantial change in New York law. The legislation created an unusual hybrid — a contract right to recover attorneys’ fees is implied by statute. The law provides: "Whenever a lease of residential property shall provide that in any action or summary proceeding the landlord may recover attorneys’ fees and/or expenses incurred as the result of the failure of the tenant to perform any covenant or agreement contained in such lease * * * there shall be implied in such lease a covenant by the landlord to pay to the tenant the reasonable attorneys’ fees and/or expenses incurred by the tenant as the result of the failure of the landlord to perform any covenant or agreement on its part to be performed under the lease”.
Previous decisions have analyzed that statute to require (1) that there be a "triggering” lease provision giving the landlord the right to recover legal fees for a breach of the lease and (2) that the tenant be successful either in proving the failure of the landlord to perform a covenant under the lease or in defending a proceeding brought by the landlord (Greco v GSL Enters., 137 Misc 2d 714).
The leases of the tenants in this proceeding were received in evidence. Four of the leases are on the 1981 and 1982 standard form of apartment lease printed by the Real Estate Board of New York, Inc. This court has previously held that paragraph 20 (a) (5) of that form is sufficient to "trigger” a tenant’s rights under Real Property Law § 234 (Greco v GSL Enters., supra). Although those leases also provide the tenants an explicit contract right to recover attorneys’ fees, the statutory right of recovery may not be reduced by the lease. "Any waiver of this section shall be void as against public policy” (Real Property Law § 234).
The 1967 lease of Alan Flacks, a rent-controlled tenant, gives the landlord the right, upon eviction, to "relet said premises * * * and out of any rent so collected or received Landlord shall first pay to itself * * * reasonable attorneys’ fees * * * Should any rent so collected by Landlord after the payment be insufficient to fully pay to Landlord the sum equal to the rent stipulated for herein, the balance shall be paid by Tenant.” Attorneys’ fees clauses continue into statutory tenancy even if the lease was executed prior to the enactment of Real Property Law § 234 (College Props, v Bruce, 122 Misc 2d 766 [App Term, 1st Dept], affd 104 AD2d 1063). Plainly, the lease clause is sufficient to trigger the tenant’s rights under *59 Real Property Law § 234 since it applies if the tenant breaches the lease.
By contrast, the Tenants Association and Ms. Klum are not tenants entitled to collect attorneys’ fees under the lease (Nesbitt v New York City Conciliation & Appeals Bd., 121 Misc 2d 336, 338). Neither is a tenant under a lease with a "triggering” clause. Rights under Real Property Law § 234 are limited to actual tenants with appropriate lease clauses.
"[T]he obvious intent of the Legislature to balance * * * the standard attorney’s fee provision contained in the standard form lease” (College Props, v Bruce, supra, 122 Misc 2d, at 768) clearly establishes the applicability of Real Property Law 234 to proceedings under the Housing Maintenance Code (Administrative Code of City of New York § 27-2001 et seq. [HMC]) to obtain repairs. There is an implied covenant in every residential lease that the premises "and all areas used in connection therewith in common with other tenants or residents are fit for human habitation * * * and that the occupants of such premises shall not be subjected to any conditions which would be dangerous, hazardous or detrimental to their life, health or safety” (Real Property Law § 235-b [1]). "Owner agrees that the Apartment ánd the Building are fit for human habitation and that there will be no conditions which will be detrimental to life, health or safety” was an express warranty in four of the leases in this proceeding.
In the instant proceeding, the court after trial granted an application by the petitioning tenants, pursuant to HMC § 27-2115 (h), (i), to direct the owner to remove "conditions constituting violations” from the building. The current application is brought by the tenants, pursuant to Real Property Law § 234, for attorneys’ fees resulting from the injunction proceeding. The reported cases have discussed the application of Real Property Law § 234 in nonprimary residence proceedings (Cier Indus. Co. v Hessen, 136 AD2d 145), actions for abatements resulting from breaches of the warranty of habitability (e.g., Sutton 56 Co. v Garrison, NYLJ, July 2, 1986, at 6, col 1 [App Term, 1st Dept]), and proceedings under RPAPL article 7-A (Greco v GSL Enters., supra). However, they have not discussed its application to injunctive proceedings brought under the Housing Maintenance Code to remove violations.
The law divides violations of the Multiple Dwelling Law, HMC and other statutes into three hazard classes. "Such classification shall be based on the effect of the violation upon *60 the life, health or safety of the occupants of the building and upon the public” (Administrative Code § 27-2115 [d]; Maresca v 167 Bleecker, 121 Misc 2d 846, 850). The conditions here involved class C (immediately hazardous) and class B (hazardous) violations, ranging from a lack of adequate hot water and water pressure to infestations of mice and vermin. The court’s order to correct those conditions is based on the finding that the conditions existed (see, Rosenthal v Helfer, 136 Misc 2d 9).
The existence of "hazardous” and "immediately hazardous” violations establishes "conditions which would be dangerous, hazardous or detrimental to [the tenants’] life, health or safety” (Real Property Law § 235-b [1]); they are, without doubt, breaches of the implied warranty. Therefore, they constitute a "failure of the landlord to perform any covenant or agreement on its part to be performed under the lease” (Real Property Law § 234). It follows that a successful proceeding under HMC § 27-2115 (h) is, of necessity, one brought by a tenant as a result of the breach of the warranty of habitability; therefore, the tenant may properly invoke Real Property Law § 234. "[W]here the statutory language is clear and unambiguous, the court should construe the statute to give effect' to the plain meaning of the words used” (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345; Bender v Jamaica Hosp., 40 NY2d 560, 562).
The respondent argues that there is no obligation to pay any attorneys’ fees because the agreement between the tenants and the attorney is contingent; that is, it argues that there are no fees "incurred” within the meaning of Real Property Law § 234. Moreover, the term "incurred” has been interpreted " '[t]o have liabilities cast upon one by act’ ” (Manor Mgt. Assocs. v Deutsch, 126 Misc 2d 1006, 1008). There the court held that as soon as the tenants consulted their attorney liability ensued; legal fees were "incurred” (see also, Scotia Assocs. v Bond, 126 Misc 2d 885, 886). The Court of Appeals has analogously held that medical expenses were "incurred” even when they were paid by someone other than the recipient. (Rubin v Empire Mut. Ins. Co., 25 NY2d 426.) The oral retainer agreement in this case provided that the attorneys would be paid an amount to be awarded by the court under Real Property Law § 234. The court finds that under that retainer the fees were "incurred” by the tenants.
The courts have discussed, in the context of attorneys’ fees under the Civil Rights Act (42 USC § 1988), retainer agreements where the attorneys’ services are provided by legal *61 services corporation (Matter of Johnson v Blum, 58 NY2d 454, 459; Matter of Rahmey v Blum, 95 AD2d 294, 302; Hensley v Eckerhart, 461 US 424, 446, n 6; New York Gaslight Club v Carey, 447 US 54, 70-71; Washington v Seattle School Dist. No. 1, 458 US 457, 487, n 31; Copeland v Marshall, 641 F2d 880, 889). Indeed, courts have permitted the use of multipliers of the basic "lodestar fee” in cases where the fee was contingent on successful results (Matter of Rahmey v Blum, supra, 95 AD2d, at 304).
The logic of those cases is applicable here. The proof at the hearing on the amount of attorneys’ fees shows that the tenants are not financially able to afford retaining counsel of the caliber of their current attorneys if they were required to pay fees at going market rates regardless of the outcome of the case. The court is aware that code enforcement cases have often been brought by other counsel on similar terms to improve the quality of the housing in this city. So too, experienced, competent counsel represent tenants in nonpayment, and other landlord-tenant proceedings where Real Property Law § 234 applies, where the amount of the fee is set by the court after a successful defense. There is no reason to preclude impecunious tenants from access to the courts merely because they are unable to afford the costs of extended litigation. The Legislature adopted Real Property Law § 234 to address that very problem. (McMahon v Schwartz, 109 Misc 2d 80, 82.)
The court has reviewed the testimony and the detailed time records produced by petitioners’ counsel. The court finds the records to be adequate and the time billed to be reasonable. The court is familiar with these proceedings and is well aware of the amount of work entailed. The court does not credit the respondent’s testimony which attempts to limit some of the time charges based on courtroom observations. The court finds that an hourly rate is an appropriate measure of the value of the services. The rate sought by petitioners’ trial counsel, $175 per hour, is reasonable. Counsel is most knowledgeable and has, to this court’s observation, handled the complex issues raised by the case such as the application of HMC § 27-2115 (h) to violations of the Zoning Resolution in a most professional fashion. The court finds that the rate of $125 per hour for associates is reasonable. The rate for the attorney awaiting admission is reduced to $90 per hour. The claimed time charges must be reduced by the number of hours not directly attributable to this proceeding. The court finds that the fair and reasonable value of the legal fees incurred in the prosecu *62 tion of this proceeding, including the protracted trial necessitated in large part by respondent’s reluctance to admit the indisputable, is $12,352.50. The court notes that the proceedings achieved essentially all of the petitioners’ objectives. Although the cases would appear to authorize a "multiplier” for the contingent nature of the retainer, the court will not apply one in this instance.
Petitioners also seek attorneys’ fees for the conduct of this hearing on the question of the attorneys’ fees. In a similar context — the determination of a fine for civil contempt measured by costs, including attorneys’ fees, of the proceeding— the court has found that "fees on fees” are appropriate (Alfonso v Rosso, 138 Misc 2d 915). That logic is equally applicable here. The hearing was unduly protracted by respondents in an effort to attempt to reduce the value of the attorneys’ fees awarded to petitioners. The court finds that the hourly fees previously described are appropriate. The fair and reasonable value of the fees for this hearing, up to the end of the testimony (see, Alfonso v Rosso, supra, 138 Misc 2d, at 920) is $2,122.50.
Accordingly, the court finds that respondents are liable to petitioners in the sum of $14,475 for attorneys’ fees and for disbursements of $191.92.