*1019 OPINION OF THE COURT
Minna R. Buck, J.
Each of the above petitions seeking custody of the child Lisa P., born February 12, 1987, was filed in January 1988, within one week of the filing of a neglect petition (N-30-88) and the child’s removal from her parents by the Commissioner of Social Services (hereinafter DSS). By stipulation, all proceedings were consolidated.*
Following certain admissions by Scott and Adrienne P., Lisa’s parents, the child was adjudicated as neglected and released to Michele M. (maternal grandmother) as a "suitable relative”. At that point, the court then reviewed the social investigations prepared by the Probation Department with respect to each of the petitioners, and ruled that the child should remain with Michele M. pending disposition of the various custody matters and without prejudice to their outcome. A consolidated hearing on the three custody petitions (including separate petitions filed by the paternal aunt and the paternal grandparents) was commenced on May 12, 1988 and continued on June 21, 23 and 30.
 The procedure followed by the court rests on two conclusions of law which were not contested by any of the parties, but which should be made explicit, namely, that the granting to certain named relatives of a child alleged to be abused or neglected the right to intervene in an article 10 proceeding with respect to custody determinations (Family Ct Act § 1035 [e]) does not preclude those individuals from seeking custody pursuant to Family Court Act § 651; and that a finding that a child has been neglected or abused as defined in Family Court Act § 1012 constitutes "extraordinary circumstances” sufficient to require the court, in a custody proceeding initiated by a third party against biological parents, to consider the best interests of the child (Matter of Bennett v Jeffreys, 40 NY2d 543).
EFFECT OF FAMILY COURT ACT § 1035 (e) UPON RELATIVE’S STANDING UNDER FAMILY COURT ACT § 651
As suggested by the Practice Commentaries, Family Court Act § 1035 (e) (added L 1986, ch 699, amended L 1987, ch 443) *1020 filled "a major gap in Article 10 practice * * * the Article was silent about the rights of other adult members of the child’s family * * * [who] often had to pursue cumbersome and uncertain procedural devices to participate in the proceedings” (Besharov, 1986 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 1035 [e], 1988 Pocket Part, at 73). In enacting these changes, the Legislature did not alter Family Court Act § 651 in any way, and it must be presumed there was no intention that the procedural refinements in article 10 custody determinations should have any impact on the well-settled case law regarding standing pursuant to section 651 (McKinney’s Cons Laws of NY, Book 1, Statutes § 97; Matter of Daniel H., NYLJ, Mar. 6, 1986, at 12, col 3 [Fam Ct, Bronx County 1986]).
Indeed, given the different implications of granting custody to a nonparent relative pursuant to article 6 as contrasted to article 10, it is clear that the addition of certain procedural rights for nonparents in the latter cases should not be construed as limiting their previously established rights in the former. Once custody has been awarded in an article 6 proceeding, there is no limit on its term; any party seeking to transfer custody, including a natural parent, has a heavy burden of demonstrating that such modification is in the best interests of the child. On the other hand, when a child is placed in the custody of a relative pursuant to an article 10 disposition, it is only for a period of time limited by statute, and the party seeking to extend custody with that relative has the burden of proving that the best interests of the child require continued placement away from the natural parent (Family Ct Act § 1055 [b]). Further, a relative’s right to intervene in article 10 proceedings requires the consent both of the natural parent(s) and the court (Family Ct Act § 1035 [e]).
FINDING OF NEGLECT/ ABUSE CONSTITUTES "EXTRAORDINARY CIRCUMSTANCES”
Although the primacy of parents’ rights to custody of their children over those of all third parties is well established in constitutional law (Stanley v Illinois, 405 US 645) and reflected in New York’s statutes and decisional law (Family Ct Act § 1011; Matter of Bennett v Jeffreys, supra; Matter of Merritt v Way, 58 NY2d 850), here there have been findings that Lisa is a neglected child within the meaning of Family *1021 Court Act § 1012 and that her continuation in her parents’ home would be contrary to her best interests. This court concurs in the rulings in Matter of Daniel H. (supra) and Matter of Alberta V. v Charles C. (132 Misc 2d 300, 304) that any adjudication that "for the [period] of the dispositional order made in the neglect proceeding the parents would not be fit to care for their child” constitutes "extraordinary circumstances”.
Thus, both the grandparents and the paternal aunt in the instant case had standing to pursue their petitions and have the court consider the best interests of the child for the purposes of a custody determination.
With respect to the child’s long-term best interests, the court is aware that, as between two parents, case law admonishes that the decision must be grounded in the "totality of circumstances” (Friederwitzer v Friederwitzer, 55 NY2d 89, 93-96). Certainly, the court can do no less in considering the custody claims of third parties.
In the instant case, this requires factoring in the implications of the neglect adjudication, particularly since that is the very basis on which the nonparent petitioners have been allowed to go forward. When one looks at the statutory scheme as set forth in the Family Court Act, it is clear that even in the face of findings of neglect or abuse, there is a rebuttable presumption that the disposition most likely to be in the child’s best interests is either release to parents or, if placement is deemed necessary, an early return to the parents’ home (Family Ct Act §§ 614, 1015-a, 1055 [b], [c]; Matter of Faith Z., 92 AD2d 990; Matter of Alberta V. v Charles C., supra, at 305; Matter of Daniel H., supra).
Here, the court finds that the presumption that the best interests of Lisa lie in an eventual return to at least one of her parents has not been overcome at this time. As of the time of the hearing, Lisa’s parents were once again separated, although Adrienne stated that she was then pregnant with Scott’s child. Given the provisions of the dispositional order under N-30-88, which requires, inter alia, that both parents undertake counseling and parent skills training, and the past history of their relationship, it is entirely possible that this young couple may yet stabilize their marriage and overcome the problems which led to the State’s intervention in their family’s life.
On the other hand, this record unfortunately suggests it is *1022 also possible that Scott and Adrienne will be unable to establish a stable home for Lisa, either together or individually. Nevertheless, both the parents and Lisa are entitled to the opportunity for a demonstration during the term of the article 10 order that this family may be reunited under the standards of the same statute which authorized Lisa’s removal in the first place (Family Ct Act §§ 1011, 1012 [fj; § 1055 [b]), rather than placing the burden of proof upon the parents themselves to show that Lisa would be better off with them than with one of their relatives (cf., Matter of Merritt v Way, supra).
To this end, it appears that continuation of the child in Ms. M.’s home under the article 10 order is in the best interests of the child. Due to grandmother’s protective instinct toward Lisa, and her demonstrated concern for Lisa’s parents, this arrangement is most likely to be conducive to encouraging the relationship between each of the parents and Lisa, as well as supporting whatever efforts the parents will make to stabilize their marriage.
It is appropriate to emphasize, however, that the dismissal of Ms. C.’s petition should in no way be construed as casting doubts on her ability to provide an excellent home and upbringing for the child, or foreclosing the possibility of a finding that an award of custody to Ms. C. would be in Lisa’s best interests, considering the totality of circumstances at a future time. (Given this possibility, Ms. C. should be granted reasonable visitation, should she seek it, for the period of the article 10 order.)
Finally, with respect to the amended petition for visitation by the P. grandparents, it is entirely appropriate that the petition should be granted, subject to certain restrictions which are specified in the order.

 A formal motion to intervene in each of the other proceedings, including N-30-88, was made by petitioner Michele M., and the motion was granted without objection from the respondents. The other petitioners moved orally to intervene in the neglect proceeding, and were permitted to do so in the absence of any objection from respondent.