*252 OPINION OF THE COURT
David F. Jung, J.
Two petitions praying for the custody of Elizabeth Veeder have been filed with the court. The first is by two persons wholly unrelated to the child, but having a nexus with her through their adopted son who is the brother of the subject child. They bring a petition on behalf of the sibling as well as on behalf of themselves. The second petition is by the paternal grandfather.
Elizabeth is currently in the custody of the Commissioner of Social Services for Fulton County. Pursuant to Family Court Act article 10, the Commissioner gained custody of the child approximately two years ago and placed her in the foster home of respondents, Waite. Said placement continues to the present date.
Pursuant to Domestic Relations Law §§ 115 and 115-b, the natural mother of Elizabeth executed a judicial consent before this court on January 23rd, 1991. Thereafter and on June 13th, 1991, the child was found to be permanently neglected by her father and by order of the court dated June 26th, 1991, the guardianship and custody of Elizabeth was transferred to the Commissioner of Social Services for Fulton County. Consequently, she is freed for adoption.
Elizabeth’s brother, Michael, a petitioner herein, was placed in the custody of the Commissioner of Social Services for the County of Montgomery by a surrender document executed by both natural parents on December 16th, 1988 and approved by the Montgomery County Family Court on February 7, 1989. Thereafter, Michael was adopted by petitioners Whalen.
Respondent Commissioner and respondents Waite have moved to dismiss the petitions upon the grounds that all petitioners lack standing and that even if any of them do, the court should decline to exercise jurisdiction since the appropriate remedy is a petition for adoption.
Subsequent to the instant petition for custody, petitioners Whalen filed a petition with this court for adoption of Elizabeth. Likewise, respondents Waite have filed a petition for adoption.
[After concluding that the court has jurisdiction to entertain the matter and that petitioners have standing, discussion of which has been omitted for purposes of publication, the court continues as follows:]
*253 OTHER AVAILABLE REMEDIES
Assuming that the court has jurisdiction and that the petitioners have standing both adjective and substantive, it is further argued that the court should decline to hear said petitions for the reason that the proper course for petitioners to follow is an adoption proceeding. Respondent relies on Matter of Smith v Lascaris (106 Misc 2d 1044). In that case custody and guardianship of the child had been awarded to the Commissioner of Social Services after a finding of abandonment pursuant to section 384-b of the Social Services Law. The grandmother of the child filed a custody petition against the Commissioner. Although the court found that the grandmother had an interest in the welfare of the child and hence standing (citing Matter of Humphrey v Humphrey, 103 Misc 2d 175), it further concluded that, "Adoption is the only way that the State can assist children who have been found to be abandoned in finding a permanent home.” (Matter of Smith v Lascaris, supra, at 1050.) "To allow the petitioner to proceed would be to defeat the public policy of New York” (at 1050). The court noted, as does this one, that the consent of the Commissioner will be required by the adopting parents. (Domestic Relations Law § 111 [1] [f].) The court went on to state that should "the commissioner withhold his consent, it would appear that the petitioner in such an adoption proceeding would have the right to commence a proceeding pursuant to CPLR article 78 and to have a court determine whether the commissioner has an appropriate basis for withholding such consent” (at 1050).
In Matter of Alberta V. v Charles C. (132 Misc 2d 300, 305), the court cited Matter of Smith v Lascaris (supra) and Matter of Peter L. (59 NY2d 513) for the proposition that, "The law is clear in that once custody and guardianship of a child has been placed in an authorized agency and the child freed for adoption by virtue of permanent surrender or termination of parental rights, the court may not exercise jurisdiction of a custody petition by a nonparent, in that adoption has become the exclusive procedure by which to obtain custody of the child.” However, in the Alberta V. case, a nonparent was seeking custody from the Commissioner of Social Services of a child who had not been freed for adoption, but had been placed with the agency for a limited period of time due to parental neglect. The court concluded that the "best interests of the child” test be applied to said situations and that there *254 is a "rebuttable presumption that the child’s best interests lie in continuing custody in the authorized agency”. (Matter of Alberta V. v Charles C., supra, at 305.)
It is important to note that Matter of Peter L. (supra) was a proceeding by the Commissioner of Social Services for foster care status review pursuant to section 392 of the Social Services Law. The court found that potential dispositions were statutorily limited by section 392 and that in the context of a foster care review a grandmother seeking custody of the child has "no special nonconstitutional right to custody of the child”. (Supra, at 516.) Although the court further found that the "best interests test” was not the determinative factor in this case, it hypothetically employed it and found that foster care placement with the ultimate goal of adoption was in the best interests of the child.
A similar result occurred in Matter of Elaine R. v Department of Social Servs. (139 Misc 2d 694). In that proceeding, foster parents who had petitioned for the adoption of children who had been placed with them after their guardianship and custody had been vested with the Department of Social Services pursuant to a surrender, petitioned for custody against the Commissioner after the Commissioner withdrew its consent to the adoption. The court concluded that it did not have jurisdiction to hear the petition and dismissed it citing Matter of Smith v Lascaris (supra). After reviewing the statutory scheme set forth in the Social Services Law, the court stated, "To allow petitioners to circumvent the adoption process and vest custody in petitioners leaving the child without permanent placement would leave the child in a 'state of limbo’, contrary to the intent of the statute”. (Matter of Elaine R. v Department of Social Servs., supra, at 697, citing Matter of Peter L., supra.)
There are also cases that find certain statutory schemes to be the exclusive method of seeking permanent custody. In Matter of Sierra H. (138 Misc 2d 908), a maternal aunt and her husband sought custody of two children, one of whom had been determined to be neglected, and the second the subject of a child protective proceeding that was pending in the court. The court dismissed the custody petitions, but permitted the parties to intervene pursuant to Family Court Act § 1035 (former [e]). That law provides that: "[t]he child’s adult sibling, grandparent, aunt or uncle not named as respondent in the petition, may, upon consent of the child’s parent appearing in the proceeding, or where such parent had not appeared then *255 without such consent, move to intervene in the proceeding as an interested party intervenor for the purpose of seeking temporary or permanent custody”. (Family Ct Act § 1035 [former (e)].)
CONCLUSIONS
The court has jurisdiction to entertain the custody petition and petitioners Raymond L. Veeder, George T. Whalen and Elizabeth M. Whalen have standing to seek custody. The petitioner, Michael W. Whalen, has standing through his parents to seek visitation with his sister, Elizabeth, pursuant to Domestic Relations Law § 71.
A review of the petitions discloses a prima facie interest in the child by the adult petitioners. They each have an interest in Elizabeth either as a blood relative, i.e., the grandfather, or as a parent of a sibling. The grandfather appeared pro se and although not very eloquently set forth, he stated, among other things "She would be better off with family instead of strangers.” The Whalens similarly allege that Elizabeth should be placed in a home with her brother. Both petitions restate the statutory scheme and public policy of the State of New York to prefer placement with relatives if possible.
It is clear from the position taken by the Fulton County Department of Social Services that it favors continued placement with and eventual adoption by respondents Waite. This is an understandable sentiment in light of the experience that Fulton County DSS has had with the Waite family as the foster home of Elizabeth for almost two years. It does not take a great stretch of the imagination to envision a scenario where consent to the adoption per Domestic Relations Law § 111 (1) (f) must be given to one set of petitioners as opposed to the other. An ensuing article 78 proceeding and perhaps appeals thereafter would never allow the court an opportunity to ascertain what is in the best interests of Elizabeth. That would be doubly so in the event that the grandfather chose to petition for adoption as well.
Last, but by no means least, we must remember that Elizabeth has rights as well which can best be asserted and protected by her Law Guardian in a plenary custody trial.
Permanency planning for Elizabeth can be accomplished by granting custody upon the condition that adoption take place *256 and the court can retain jurisdiction over the matter for review purposes if necessary.
Consequently, the motions to dismiss the custody petitions are denied.