OPINION OF THE COURT
Jones, J.
 Members of the extended family of a child who has been surrendered to an authorized agency for the purpose of adoption have no special nonconstitutional right to custody of the child which permits them to override a decision by the agency to place the child for adoption with adoptive parents to be selected by the agency.
In May, 1981 the Commissioner of Social Services instituted this proceeding in Family Court, New York County, pursuant to section 392 of the Social Services Law for review of the foster care status of Peter L., Jr., a lad five years of age who had been in a foster home, through placement by the Department of Social Services, for a *517 period of 18 months, thereby requiring judicial review of his foster care status.[1] The child had initially come into the custody of the department in November, 1979 when an aunt with whom the father had left him was unable to care for him. After the department had received the child and placed him in a foster home the father was killed in an incident of street violence and promptly thereafter the boy’s mother executed and delivered to the commissioner both a voluntary placement agreement dated September 11, 1980, transferring temporary custody, and a surrender instrument pursuant to section 384 of the Social Services Law dated September 19, 1980, committing the guardianship and custody of the child to the commissioner and authorizing him to consent to the adoption of the child in place of the parent.[2]
During the 18-month period when Peter was in the care of the foster parents the Social Services Department made inquiry of the child’s 57-year-old grandmother, with whom the child and his father had lived for a time before going to the aunt’s, whether she might accept release of the boy, but the grandmother declined because of ongoing asthmatic, heart and arthritic problems to which she was subject. Peter did however spend some periods of visitation with her over holidays.
When the foster care status review proceeding was instituted, by order of the Family Court, the grandmother was given notice and permitted to participate with counsel. The agency stated then that it was recommending placement of Peter for adoption with a foster family thereafter to be selected.[3] The grandmother’s attorney objected to such placement asserting that, although a proceeding had not been formally instituted, custody should be given to the grandmother as a blood relative of Peter.[4] The agency, opposing that request on the basis of investigation of the *518 grandmother’s home while Peter was in foster care, took the position that an award of custody to her would not be in the child’s best interests.
Following the receipt of testimony at a hearing scheduled for trial on the grandmother’s request for custody along with the foster care status review sought by the commissioner, Family Court issued an order and opinion reciting that most of the testimony had focused on the suitability of the grandmother as the person to whom the child should be discharged for permanent care and adoption, stating that the grandmother had no greater legal right to Peter than any stranger, finding that it was not in the best interests of the child to be placed with the grandmother, and directing that he be placed in a suitable adoptive home.
On the grandmother’s appeal from the order of Family Court the Appellate Division reversed the order, terminated authorization for foster home placement and awarded custody to the grandmother. Although stating the question posed as “all other factors being equal, whether the law favors a natural grandparent over a foster couple in awarding custody of a child who has been surrendered to the care of the State”, the court, reciting facts which it concluded demonstrated that the grandmother offered a “loving and close-knit family environment”, nevertheless resolved the appeal on the ground that “the best interests of the child would manifestly be better served by placing the child in his grandmother’s care and custody”. No provision for adoption, however, was included in the order.
On the commissioner’s appeal we now reverse the Appellate Division’s order and reinstate the order of Family Court.
At the outset we determine that the disposition made by the Appellate Division is not within the statutorily authorized dispositions in a proceeding brought under section 392 of the Social Services Law. Where the guardianship and custody of a child have been committed to an *519 authorized agency by a surrender instrument executed by the surviving natural parent empowering the agency to consent to adoption only two dispositions are available to the court: it may either direct that foster care be continued (Social Services Law, § 392, subd 7, par [a]) or it may direct that the child be placed for adoption either in the foster family home where he resides or has resided or with any other person or persons (Social Services Law, § 392, subd 7, par [d]). Unlike the order of Family Court, which directed placement for adoption, the Appellate Division has done neither; it has discharged Peter from foster care and done no more than vest custody in the grandmother, leaving the child without either placement looking to the establishment of a permanent parental relationship through adoption or the prospect of subsequent review of foster care status with the possibility of adoption placement at that time. The disposition at the Appellate Division has left the child in a state of limbo, precisely contrary to the intent of the statute which, with recognition that “all children deserve the right to the security of parents and a home”, sought to release foster children for adoption or to return them to their biological parents and natural home environment (NY Legis Ann, 1970, pp 32-33; Matter of John J., 89 AD2d 933).
The grandmother argues however that, notwithstanding the execution by the mother as surviving parent of a surrender under section 384, as a close relative and a part of Peter’s extended family she has a pre-emptive right to custody of the child surpassing that of strangers who might be selected by the agency as suitable adoptive parents. To the extent that she now argues that she has a fundamental, constitutional, substantive due process right to the custody of her grandchild and a constitutionally protected liberty interest in the child, the argument — not tendered in Family Court and not relied on or addressed by the Appellate Division — is unavailable in our court (Tumolillo v Tumolillo, 51 NY2d 790). We are therefore foreclosed from consideration of the constitutional claims which are the principal components of the grandmother’s argument before us.
*520 Nor is any statutory or judicial precedent in this jurisdiction offered for the proposition that a fit member of an extended family takes precedence over adoptive parents selected by an agency to which has been transferred the natural parent’s power to consent to an adoption. The recognition of any such right would of course materially undermine the decision voluntarily made by the parent in determining to confer on the agency the power to act in her place in granting or withholding consent to adoption. Moreover, the complexity which would be added to the process of adoption of a child surrendered to an agency if all such fit members of the child’s extended family were to be recognized as possessing a prior claim to a child, the relinquishment of which would have to be obtained before a secure placement for adoption could be made, itself argues forcefully against the recognition of the claim now urged. Grandparents are not without statutory rights with respect to their grandchildren (e.g., Domestic Relations Law, §§ 72, 240; People ex rel. Sibley v Sheppard, 54 NY2d 320), but those rights do not entitle a grandparent to override the right of the natural parent to surrender the child to a public agency and to confer on it the right to consent to the adoption of the child.
In the present case, the position of the grandmother, in whose home the child had last resided more than 18 months before this proceeding was brought, was at best no better than that of short-term foster parents who seek to retain custody of a child thereby frustrating the adoption plan devised by an agency. We have said that such litigants face a virtually impossible task for they “must demonstrate not only that they would make suitable adoptive parents, but, rather, that they would provide a better adoptive home than that planned by the department or agency” (People ex rel. Ninesling v Nassau County Dept. of Social Servs., 46 NY2d 382, 389, 391). Without doubt, no such high standard of proof has been met in this case as the grandmother arguably concedes by her attempt to persuade that she enjoys a superior position in the contest for Peter by virtue of her familial relationship.
Finally, we would note that, even were best interests of the child — the basis for decision employed by both *521 courts below — the determinative factor in this dispute, we would conclude that the finding made by Family Court that such interests would not be served by placing Peter with his grandmother more nearly comports with the weight of the evidence introduced at the hearing. As was found by the trial court, she lives alone and has few personal relationships other than one with a daughter. Of her three other children, she has disowned a daughter and has lost both her sons, including Peter’s father for whom she was in deep mourning at the time of the trial a year and a half after his death, through street violence. During Peter’s visits to her after she had declined to take the child because of her medical problems he was largely kept inside her home without other companionship. The child has drawn an impression from his grandmother that he is expected to avenge his father’s death on maturity and that he has a great responsibility for his grandmother who is dependent on him emotionally. After visits to her or telephone calls from her he exhibited signs of despair. A psychologist who testified for the grandmother stated that she would need help in securing educational and recreational facilities for Peter as well as counseling to provide a suitable home and that she could not accept guidance from the agency in that regard. The expert also stated that it would not be unusual for a person with the grandmother’s ethnic background to mourn for her sons for three to five years and was unable to say whether the manner of her own two sons’ death had permanently impaired her ability to care for Peter. In light of the foregoing factual findings — none of which impugn the sincerity or depth of her feeling for her grandson — the conclusion that Peter’s best interests would not be served by being in his grandmother’s care is unquestionable.
Because, for the reasons stated, the determination by the Appellate Division awarding custody of the child to his grandmother was in error, the order of that court should be reversed and the order of Family Court reinstated.
Chief Judge Cooke and Judges Jasen, Wachtler, Meyer and Simons concur.
*522 Order reversed, with costs, and the order of Family Court, New York County, reinstated.

. (Social Services Law, § 392, subd 2.)

. The execution of the September 19 surrender which had been referred to in the petition but was not attached or introduced in evidence was conceded on oral argument in our court.

. The foster parents with whom Peter had been living did not wish to adopt.

. When pressed by the court as to whether custody was sought by the grandmother for the purpose of adoption counsel responded affirmatively. The grandmother’s argu *518 ment in our court has encompassed both a claim that in seeking to place a child for adoption the agency must turn first to close relatives and a broader claim that a child may be discharged to the custody of a fit, close relative in a proceeding under section 392 of the Social Services Law even when the relative may not meet “the strictest requirements for adoption”.