OPINION OF THE COURT
Bruce M. Kaplan, J.
The question of who will adopt the child A. provides a vehicle for the court to examine the interplay between a number of recently enacted laws, and to ascertain how to give effect to each of these independently enacted laws without doing violence to the objectives of the others. The statutes to be examined are Domestic Relations Law § 115 (1) (c); Domestic Relations Law § 115-d and Social Services Law § 384-b (10)
The haunting spectre of Lisa Steinberg looms large in our memory. Her life was brutally sundered at an all too young age, the results of the violent actions of a psychotic brute who inflicted on her grievous injuries, both physical and emotional.
Society’s horrified reaction engendered a purposeful resolve that the gaps in the law that permitted this situation to occur would be remedied. As a result a statutory scheme was enacted designed to afford the greatest possible protection for helpless infants.
It was the product of such endeavors as the work of a Special Grand Jury convened in New York County by District Attorney Morgenthau, legislative hearings, forums and colloquiums, and on all levels of the community people engaging in single and collective soul searching.
One tangible result was the enactment of legislation requiring the most thorough-going scrutiny of prospective adoptive parents before a child could be placed in their home. It also provided for monitoring the child’s sojourn in a preadoptive home, and requiring the expeditious carrying forward of the adoptive process.
One specific legislative response was the enactment of Domestic Relations Law § 115-d and the amendment of Domestic Relations Law § 115 by Laws of 1989 (ch 700). These statutes require a petition for certification to be granted before an *762 applicant could accept physical custody of the child for the purpose of adoption.
At a point nearly contemporaneous in time, the Legislature amended Social Services Law § 384-b by Laws of 1991 (ch 588). This law permitted such enumerated classes of persons as foster parents or relatives of the child to file petitions for adoption prior to the completion of a termination proceeding.
Each of these statutes advance estimable goals that sometimes clash with each other. If they are to achieve their intended results the conflicting provisions must be reconciled. Such is the objective of this opinion.
The events giving rise to this opinion are as follows:
A., born October 28, 1989, came into the care of the Commissioner of Social Services (CSS) in connection with a Kings County Family Court neglect proceeding. Approximately two years later Brookwood, the child care agency with planning responsibility for A., instituted B-13687/91, a petition to terminate the parental rights of A.’s mother and putative father.
During the pendency of that proceeding, A. was placed into the C. home on a preadoptive basis. He has adjusted well there, an occurrence that markedly contrasts with three previous unsuccessful foster care placements.
On September 11, 1992, this court made a finding of abandonment based on clear and convincing evidence. After taking testimony respecting A. which was focused on the care provided by Ms. C., her bonding with A., and his adjustment to her home, A. was committed to the custody and guardianship of CSS, and Brookwood for the purpose of planning and consenting to adoption.
At the time that the termination was pending, and in reliance on Social Services Law § 384-b (10), A.’s uncle submitted for filing a petition for adoption. Although a nonresident of New York, he failed to make application for certification as a qualified adoptive parent pursuant to Domestic Relations Law § 115-d as required by Domestic Relations Law § 115 (1) (c), a default which would preclude taking physical custody of, and removing A. from this State.

Mr. S. Has Not Filed, Nor May He File an Agency Adoption Proceeding

It is the position of Mr. S. that the certification requirement is inapplicable to him because his petition to adopt should be *763 considered an agency adoption. His rationale is simplistic, and fallacious. It is based on Domestic Relations Law § 109 (5), which defines "private-placement adoption” as any adoption other than that of a minor who has been placed for adoption by an authorized agency. That definition was contained in legislation promulgated by Laws of 1961 (ch 147).* Petitioner’s counsel would have us read this definition so expansively as to abjure the realities of what constitutes an agency adoption.
The ineluctable prerequisite for an agency adoption is a successful conclusion to a petition to terminate parental rights, with custody and guardianship being awarded to the Commissioner of Social Services, and the petitioning child care agency.
There next ensues a petition for adoption submitted on the official form set forth in 22 NYCRR, subtitle D, or one substantially similar, as required by Uniform Rules for Trial Courts (22 NYCRR) § 205.7.
The adoption petition submitted on an agency adoption markedly differs from that of a private-placement adoption formalistically, and substantively. It is accompanied by schedules verified by a duly constituted official of Brookwood, an authorized agency, as well as the consent of the authorized agency.
The petition recites the manner in which the adoptive parents obtained the child, and the period of time that the child has been placed out or boarded out with the adoptive parent(s). When that period is in excess of six months, it constitutes the six-month period of residence required pursuant to Domestic Relations Law § 112 (6), unless dispensed with by a Judge or Surrogate for reasons that must be recited in an order.
The utilization of a six-month period of foster care as the six-month preadoption period of residence is consistent with the preference, and first consideration that Social Services Law § 383 accords to foster parents who have cared for a child *764 for more than 12 months for purposes of placement for adoption. (Matter of Peter L., 59 NY2d 513 [1983].)
The practical differences between an agency adoption petition, and any other adoption petition filed pursuant to Social Services Law § 384-b (10) in coordination with a proceeding to terminate parental rights are patent. They are underscored by an examination of the termination proceedings generally, and the one held before me specifically. Since the latter sounded in abandonment I had to address two issues. The first was whether the petitioner had proved by clear and convincing evidence that the respondents abandoned A. as that term is defined in Social Services Law § 384-b. The second was whether it would be in the best interest of A. to grant custody and guardianship to the Commissioner of Social Services and Brookwood for the purpose of planning and consenting to an adoption. That determination did not arise in a vacuum, nor does it ever in termination proceedings.
After the grounds for termination have been established, the hearing proceeds to the child’s best interests where abandonment and mental illness are involved (see, Social Services Law § 384-b [4] [b], [c]), or to a separate dispositional hearing where the grounds for termination are based on a finding of permanent neglect (Family Ct Act § 623).
In making a determination of whether custody and guardianship should be awarded, testimony respecting the preadoptive home is of singular importance. Close scrutiny is accorded to the degree of bonding between the preadoptive parent(s) and child, the length of time the child has resided in the home, the child’s adjustment to the home, the integration of the child into the preadoptive family unit, the responsiveness of the preadoptive parent(s) to the child’s needs great and small, and special needs, if any. In addition, there is an in-depth investigation into such issues as the constancy and quality of resources provided for the child, be they emotional, medical, educational, physical, recreational, cultural, as well as the preadoptive parent’s capacity to nurture the child.
These inquiries are referenced to a specific foster parent who in the overwhelming number of instances is a preadoptive resource, ready, willing and qualified to adopt a child, as well as anxious to do so.
It is also obvious that in most instances a child has been in the foster home for a number of years, and that the foster parents’ credentials have been screened initially pursuant to *765 Social Services Law § 376 or Social Services Law § 377, and further validated in the dispositional hearing order following a finding of neglect or abuse.
Thereafter, the foster parent’s continuing appropriateness is vetted by annual review of placements in the underlying neglect action per Family Court Act § 1055 (b). Most importantly, the qualifications of a preadoptive parent are evaluated finally in connection with a request for an order of custody and guardianship.
Given these circumstances it would be unprecedented to issue an order of custody and guardianship where the foster parent has not been found to be an eminently suitable adoptive resource, unless special circumstances were present.
Under Mr. S.’s reading of the statute all of this would change. Social Services Law § 384-b (10) is open-ended as to who might seek to file an adoption proceeding. Persons biologically related, but having a recent and tenuous relationship with the child do have the right to petition for adoption. The suggestion that for that reason alone their suitability should be equated to that of a preadoptive parent of long-standing duration whose fitness and interaction with the child has been subjected to rigorous annual reviews runs contrary to practical realities, and the law of this State. (Matter of Peter L., 59 NY2d 513 [1983], supra; Social Services Law § 383.) More importantly, if certification were not required, it would denude children freed for adoption of the protections afforded in the aftermath of the Steinberg tragedy.

Mr. S. ’s Custody Proceeding Must be Dismissed

The custody petition brought by Mr. S. is dismissed, it being untenable once this court awarded custody and guardianship of A. to CSS and Brookwood.
As the Law Guardian correctly points out, such a result is dictated by Matter of Arnetta S. (186 AD2d 519 [1st Dept 1992]).
The dismissal of the custody petition renders academic Ms. C.’s petition for intervention therein although Social Services Law § 383 would have vouched safe her right to intervene.
Had Mr. S.’s counsel not contended that Mr. S.’s custody petition was erroneously transferred to Kings County, the following discussion would not be necessary. It is set forth so that counsel’s ignorance of controlling statutory provisions and decisional law can be rectified.
*766 Mr. S.’s counsel misperceives the basis for this court’s earlier ruling with respect to an attempt to file a custody proceeding in New York County. Once the child had been placed as the result of a successful child protective proceeding and, subsequently an extension of placement was granted, an attempt to seek permanent custody could be made only through intervention in the Kings County neglect proceeding.
Family Court Act § 1035 circumscribes the persons who may seek custody, and restricts the procedural matrix in which they shall proceed to intervention in the child protective proceeding. (Matter of George B., 155 Misc 2d 957 [Fam Ct, Schoharie County 1992]; Matter of Sierra H., 138 Misc 2d 908 [Fam Ct, Broome County 1988]; Matter of Ricky P., 135 Misc 2d 28 [Fam Ct, NY County 1987].)

Brookwood’s Haste to File the Termination Proceeding Exacerbated the Situation

Brookwood must be chastised for its calculated decision, to beat the effective date of the statute requiring that a termination proceeding be assigned to the Judge who made the finding in the Family Court Act article 10 proceeding. This requirement imposed by Laws of 1991 (ch 588) was effective September 30, 1991 and the underlying termination proceeding was filed September 26, 1991. It is all too clear that had this matter been originated in Kings County much of the travail, delay and aggravation that both Ms. C. and Mr. S. have experienced in this proceeding could have been avoided.

Order of Procedure Respecting the Adoption Petitions

The court has determined that the most elegant way of proceeding with Mr. S.’s private-placement and Ms. C.’s agency adoption petitions is to hear them sequentially, but not consolidate them. Since Mr. S. filed his petition first evidence will be adduced at a hearing where Ms. C. and her counsel may be present, but not participate. Following the completion of that hearing the court will take evidence from Ms. C. at a hearing at which Mr. S. and his counsel may be present but not participate.
The court’s concern is with the best interests of the child. Those interests will be vouched safe through the participation of the child’s Law Guardian in both proceedings.
Inasmuch as it is the court’s determination to adjudicate the adoption petition pursuant to Social Services Law § 384-b (10), *767 in furtherance of the mandate imposed by Social Services Law § 384-b, the G. visitation petition will be held in abeyance since it cannot be the subject for plenary determination until the two competing adoption petitions are acted upon by the court.

The Legislature Should Amend the Law to Require an Earlier Assertion of Intent to Adopt by Prospective Adoptive Parents

One of the infirmities of the present statutory scheme is its failure to require prospective adoptive parents to assert their interest in an expeditious manner.
For family members this can take place in a variety of ways:
1. Seeking an order of custody obviating the need to bring a neglect petition;
2. Seeking leave to intervene pursuant to Family Court Act § 1035 once a neglect petition is brought; and
3. Seeking leave to intervene in a termination proceeding, a vehicle also available to nonrelatives seeking adoption.
The latter approach would go far to facilitate adoption because the resolution of conflicting claims respecting a child’s best interests would have res judicata effect on all persons participating in the hearing, and this would ordain the result of the competing adoption petitions and markedly speed up the process.
One great enemy of the expeditious completion of adoptions is the dilatory interest of family members heretofore unknown to or uninvolved with the respondent. While family members are, all things being equal, the preferred resource, when they fail to come forward and another person does, their claim for special treatment has a hollow ring. Indeed, Matter of Daniel T. C. (141 Misc 2d 50), cited by Mr. S.’s counsel, involved a family member who had been available prior to the completion of a neglect dispositional hearing. The Legislature may well wish to amend the statute to exclude from the ranks of those eligible to petition for adoption pursuant to Social Services Law § 384-b persons previously contacted and unavailable and those who would not be located through diligent efforts.

 It is instructive that in his Practice Commentaries to Social Services Law § 371 Joseph R Carrieri notes that the section defines the terms associated with foster children, their care and custody and adoption, but that not all terminology used in the field is contained in that section. He goes on to define agency adoption as follows: "The adoption of a person by an adult wherein an authorized agency is involved, and is one of the parties consenting to the adoption.” (Carrieri, Practice Commentaries, McKinney’s Cons Laws of NY, Book 52A, Social Services Law § 371, at 408.) This definition far more accurately sets forth the reality of an agency adoption.