Matter of S.W. (2006 NY Slip Op 52201(U))

[*1]

Matter of S.W.

2006 NY Slip Op 52201(U) [13 Misc 3d 1240(A)]

Decided on November 3, 2006

Family Court, Onondaga County

Hanuszczak, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on November 3, 2006

Family Court, Onondaga County
In the Matter of S.W., R.W., C.W.
B-8766-8768-05

Onondaga County Department of Law, Joseph Zavaglia, Esq., of counsel, for petitioner;Theodore Stenuf, Esq. For respondent; David Stanton, Esq., for respondent; Linda Gehron, Esq., Law Guardian

Michael L. Hanuszczak, J.
The children who are the subjects of this termination of parental rights proceeding and the custody petitions are S. W., born on December 18, 1997, R.W., born on December 13, 1999, and C. W., born on December 4, 2001. The respondents are the parents of the subject children.
On May 18, 2004 the subject children were placed in the care and custody of the Onondaga County Department of Social Services after an adjudication of neglect against the father, C. W. and the mother, T. C. The Court found that the parents had engaged in repeated acts of domestic violence in the presence of the subject children, including an incident when the mother sprayed mace while attempting to assault the father's current wife, causing R. to choke; the mother assaulting the father with a razor in front of R.; the father pushing the mother onto the hood of a car in front of the children; and the father striking the mother in the face causing her teeth to tear through her skin in the presence of the children. The Court also found that the children had on at least one occasion been duct taped at the hands, feet, and mouth by the parents and whipped with a belt on several occasions. The Court further found that the children were left in the care of their older half-brother who engaged in inappropriate sexual contact with S. on approximately six separate occasions. The Court also found that the mother and the father habitually used drugs in front of the children and that the pattern of domestic violence in the presence of the children had been taking place since 2000.
At disposition, during the neglect proceeding, visitation and communication with the father was found to be contrary to the subject children's best interests based on their mental health. However, the respondent-father was allowed to send cards and letters to the children through the caseworker. The dispositional order also contained the same findings regarding a suspension of visitation between the subject children and respondent-mother due to their mental health problems. However, the respondent-mother was allowed to commence visitation after her successful completion of services and reports from the caseworker and the children's therapists. The petitioner in the custody proceeding is the maternal grandmother, P. F.
The subject children have had multiple placements between May 18, 2004 and the present. In 2005 S. and R. were placed in a residential treatment facility due to their emotional and behavioral problems. C. is currently in a therapeutic pre-adoptive foster home.
On December 9, 2005, the petitioner, Onondaga County Department of Social Services ("DSS"), filed a petition seeking to terminate the rights of the respondent-father and respondent-mother due to alleged permanent neglect. On July 11, 2005 the maternal grandmother filed petitions seeking custody and visitation of the subject children and on January 17, 2006 she also filed petitions to modify the placement of the children under the dispositional order of the prior neglect proceeding. The grandmother's petitions were heard during and as part of the dispositional hearing of the termination of parental rights petition. Matter of Carl G. v. [*2]Oneida County Department of Social Services, 24 AD3d 1274.
On June 8, 2006 the respondent-father and respondent-mother admitted to a variety of allegations in the permanent neglect termination petition and the matter was adjourned for a dispositional hearing.
The hearing lasted four days and testimony was heard on August 14, August 17, September 1, and October 6, 2006. The length of this proceeding prior to and after the commencement of the dispositional hearing was prolonged by the respondent-father's unavailability due to incarceration and the respondent-mother's failure to appear in Court on multiple occasions including the final date of the dispositional hearing. Adjournments were also requested and granted at the request of respondent-father's attorney.
FACT FINDING
The instant petition alleges that the respondent-father and the respondent-mother have permanently neglected the subject children. With respect to the substantive issue of law before this Court, Social Services Law §384-b(7)(a) defines, in part, that a permanently neglected child is
"...a child who is in the care of an authorized agency and whose parent...has failed for a period of more than one year following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship..."
The respondent-father admitted that the Onondaga County Department of Social Services, between the dates of May 20, 2004 and November 1, 2005, had made a thorough effort to assist, develop, and encourage a relationship between the father and children. He admitted that the above agency developed plans for services and treatment, discussing and reviewing these plans. He also admitted that the above agency attempted to review his progress on a regular basis and attempted to keep him informed of his children's health and progress. The respondent-father admitted that for more than one year he had failed to attend, participate, and progress in domestic violence services, obtain a psychological evaluation and treatment, and obtain a substance abuse evaluation and treatment as required by prior Court order. The respondent-father admitted that he had failed to keep the above agency updated on his whereabouts and had failed to work with prison staff to obtain educational and treatment services. These obligations were required pursuant to the Court's disposition of the prior neglect petition in order for reunification to talk place.
The respondent-mother admitted that the Onondaga County Department of Social Services, between the dates of May 20, 2004 and November 1, 2005, had made a thorough effort to assist, develop and encourage a relationship between the mother and children. She admitted that the above agency developed plans for services and treatment, discussing and reviewing these plans. She also admitted that the above agency attempted to review her progress on a regular basis and attempted to keep her informed of her children's health and progress. The respondent-mother admitted that for more than one year she had failed to attend, participate, and progress in domestic violence services, obtain a psychological evaluation and treatment, obtain a substance abuse evaluation and treatment, participate in alcohol abuse treatment, and also failed to attend two out of three scheduled service plan meetings concerning the children although being repeatedly referred, encouraged and Court ordered to do so in order for her to be reunited with the children.
Respondents also admitted that the DSS had made diligent efforts to encourage and strengthen the parent child relationship by providing a variety of services.
[*3]
The respondent-father's admissions that, despite the diligent efforts of DSS, he failed to participate in services designed to reunite him with his children, failed to keep DSS apprised of his whereabouts and failed to plan for the subject children's future during the statutorily relevant period warrants a finding of permanent neglect. In re Guardianship of Tyreese H., 4 AD3d 208. Accordingly, the Court finds that the father has permanently neglected the subject children.
A finding that the respondent-mother permanently neglected the subject children is supported by her admissions that she has failed to participate in services designed to reunite her with her children and failed to participate meaningfully in service plan meetings to plan for the future of her children despite the diligent efforts of DSS. Matter of Jesus "II", 249 AD2d 846. The Court finds that the mother has also permanently neglected the subject children.
DISPOSITIONAL HEARING
There was extremely credible and reliable testimony by the DSS caseworker that the subject children were diagnosed by a professional therapist with Post Traumatic Stress Disorder and Reactive Attachment Disorder ("RAD") due to their being abused by the parents. The caseworker also testified that, according to reports from the children's therapists, it was therapeutically inappropriate for the children to be reunited with their parents as it would retraumatize them and hinder the healing process. The caseworker testified that the mother has not made progress in any of the services ordered by the Court and that the mother is not complying with her alcohol and drug treatment.
During cross examination, the caseworker testified that due to the prior Court order the mother had not been allowed to call or visit the subject children due to her lack of compliance in participating in services. The caseworker also testified that the mother had been allowed to send them letters or gifts but had not done so. Furthermore, the caseworker stated that the mother had been offered the names and numbers of the children's therapists and had not contacted them. The caseworker testified that she had not been able to visit the mother's home and has no information that the mother currently resides in a stable and safe residence.
The caseworker further testified that since his release from prison the father had recently commenced drug rehabilitation services, but was unsure about the father's progress. The caseworker also stated that she does not believe that the parents are able to meet the children's needs. During cross and re-direct examination the caseworker testified she was aware that the father completed a drug rehabilitation program at the Willard Correctional Facility but that the program was not part of the Court ordered requirements for the father's reunification with the children. Furthermore, the caseworker testified that the father has not completed any other programs or services required by DSS. The caseworker stated that the father has only appeared at two of the four scheduled appointments at her office and that she had not been allowed inside the father's current residence the three times she scheduled home visits.
The caseworker also stated that S.'s and R.'s therapists at The Astor Home For Children believe that the children will benefit from a therapeutic foster home after leaving the Astor Home. She testified that the therapeutic foster home will have foster parents who have been trained to address the children's special needs due to their history of physical and sexual abuse while in the care and custody of the respondents.
The caseworker testified that the maternal grandmother who has petitioned for custody and visitation has a history of substance abuse and mental health problems and has been diagnosed as bipolar with a personality disorder. The caseworker further testified that the grandmother has a prior history with her agency which included the removal of her own children from her care and custody. [*4]The caseworker stated that the children do not know their grandmother and that the children's therapists believe that if the grandmother was granted custody of the children it would possibly retraumatize them.
The respondent-father testified that he had obtained a Temporary Order of Protection against the respondent-mother in 2003 because she repeatedly harassed him. The father admitted that the mother was injured and received staples in her head during an altercation between the two of them, including episodes of domestic violence in the presence of the children.
Respondent-father testified that he had been unable to obtain services while incarcerated in a federal penal institution and was transferred to different facilities four times. The Court notes that the period of federal incarceration preceded the filing of the instant petition and also preceded his subsequent incarceration and release from state prison. However, the father testified that since his release he has started anger management, drug counseling, and parenting classes. The father admitted during his testimony that he had missed visits at the caseworker's office.
The father also admitted to a lack of knowledge about the children's mental health needs. In a June 1, 2006 letter to the Court, which was received into evidence, the father denied that the children suffer from RAD. Instead, he blamed the petitioner agency for the children's condition as caused by the separation of the parents and children imposed by the Court at the request of the DSS. The Court finds respondent father's testimony very self-serving and further finds substantial portions of his testimony lacking in credibility.
A Court Appointed Special Advocate ("CASA") volunteer testified that the father is currently participating in services since his release from prison but the volunteer was not sure that he was benefiting from them.
The CASA volunteer testified extremely credibly and reliably that neither the father nor the mother has had any contact with the children for over two years and that she was the two older children's only regular visitor at the Astor Home and that she was unaware of any attempts by either parent to contact the children. The CASA volunteer also testified that she was present at visits where all three of the children were present together.
The CASA volunteer's testimony very credibly corroborated the agency caseworker's that the maternal grandmother has a history of substance abuse and mental health problems. The CASA volunteer also testified that although the children have asked about their grandmother they have never requested to see her.
The father's current wife, K. W., testified that the biological mother and the father were appropriate and affectionate in their interactions with the children prior to their removal and placement in foster care. Mrs. W. stated that she was unable to answer questions about a recent arrest in Onondaga County because she could not remember the events that took place nor what she was arrested for. Mrs. W. also admitted she and the respondent-mother engaged a number of years ago in a physical altercation but, stated that the mother initiated the struggle. The Court finds the testimony of Mrs. W. to be lacking in credibility and straining credulity.
N. L. M.D., an expert witness called by the respondent-mother, is a psychiatrist who conducted a psychological evaluation in 2004 of the mother and a subsequent evaluation in the Fall of 2006. Dr. L. testified that placement of the children with the mother would not be suitable for the children as respondent-mother has not improved or changed her behavior since the initial evaluation.
Dr. L. also testified that children suffering from RAD need a stable, safe, and secure environment. In addition, Dr. L. testified that if the parents were involved in the abuse of the [*5]children, the parents should not be involved in the RAD therapy. The Court finds Dr. L. a very credible witness.
P. F., the subject children's maternal grandmother, testified that she is attempting to stay in the children's lives by sending them gifts and cards. However, the witness was vague and evasive when questioned about the details of such contacts with the subject children. She also testified that the children had a loving bond with the father prior to placement. Significantly, however, she did not testify about the children's relationship with her daughter, the respondent-mother.
During cross-examination, the grandmother admitted that she had been diagnosed by a psychiatrist with atypical manic disorder and borderline personality disorder. She also testified that some of her own children were removed from her custody a number of years ago due to an adjudication of neglect and that she did not complete the services required by the Onondaga County Department of Social Services. The Court finds Ms. F. to be a well meaning grandparent but less than credible in view of her lack of initiative regarding her three grandchildren's safety during the time when they were being neglected by their parents.
In her rebuttal testimony, the caseworker testified that the father's attendance at the anger management, drug counseling, and parenting classes was inconsistent. The caseworker also testified that the father and mother were not cooperative with DSS by failing to schedule visits and failing to keep them up to date as to changes of address and phone numbers.
Finally, the caseworker testified that S. and R. are in the process of moving to a pre-adoptive therapeutic foster home and that the children have expressed excitement at leaving the residential facility and residing in the pre-adoptive residence. The caseworker stated that the therapeutic foster parents have been trained to accommodate the requirements of special needs children.
At the close of the hearing respondents' counsel urged the Court to grant their respective clients a suspended judgment while the Law Guardian for the subject children joined the County Attorney and urged the Court to terminate the parental rights of both the father and the mother and to free the children for adoption. The Law Guardian noted previous findings by the Court that the children had been present during domestic violence between the parents, that the children were supervised while the parents were under the influence of illegal substances, that the children had been duct taped, and burned, and that one of the children was sexually abused. She stated that there is no question that these are special needs children and there have been numerous opportunities for the parents to address their needs and the needs of the children but have failed to do so. The Law Guardian also argued that there is no reasonable evidence, no realistic hope that at this time or in the near future either of these parents will be able to care for the children.
DISCUSSION
The best interests of the children is of paramount concern to the Court and there is no presumption that reunification with a parent or a relation will be in the child's best interest. Matter of Jeremiah BB, 11 AD3d 763; Matter of Rita "XX," 279 AD2d 901; Matter of Ella J., 4 AD3d 527.
The credible evidence reveals that prior to the father's May 2006 release from incarceration he made no effort toward completing the services deemed necessary by the Court to establish a future safe environment for his children. If a parent fails to satisfactorily plan for his/her child's future and does not participate in programs offered during incarceration for reunification with his/her children then termination of parental rights is in the best interest of the child. Matter of Shane I., 300 AD2d 709. The Court notes that the father's only attempt at contacting his children while incarcerated was sending a few cards and since his release the father has not contacted the caseworker. If a parent has not had sufficient contact with the children or has not remained in [*6]contact with the caseworker to plan for the future of the children, then termination of parental rights is appropriate. In re Guardianship Denzell H., 308 AD2d 370.In addition to the lack of contact, the father's failure to acknowledge that the subject children have special needs makes it unlikely that he will develop a realistic and feasible plan for his children's future care. There is no evidence before the court that at the present time the father has made any realistic plan to parent these children. In Matter of Paul W. R. M., 291 AD2d 919, the Court held that if it is unlikely that the parent will change his/her mind-set then "further delay and indecision do not serve the child's best interests." In the instant case the father has continually refused to acknowledge his responsibility for his children's condition and their special needs. The Court, in the Matter of Philip D., 266 AD2d 909, stated that a Court's finding that a parent is "not likely to change his behavior is entitled to great deference" and that the Court must focus on the child's best interest when determining whether to issue a suspended judgment. Furthermore, regardless of the belated efforts of the father to complete services, without a realistic and feasible plan for the future care of his children, termination of parental rights is in the children's best interest and a suspension of judgment would not be appropriate. Matter of Ada M.R., 760 NYS2d 802 {306 AD2d 920} ; In re Guardianship of Tyreese H., 4 AD3d 208 ; Matter of Charlene Lashay J., 280 AD2d 320.
The mother admits that she has failed to complete the services necessary to provide a safe environment for her children in the future or to change her pattern of alcohol and drug abuse. The mother has also failed to provide any proof that she currently has a stable and safe residence available for the children. When the parent fails to change the behavior that was the cause of the children's removal, then termination of parental rights is appropriate. Matter of David C., 162 AD2d 973; Matter of Jesus "II," 249 AD2d 846.
There is overwhelming evidence before the Court that reunification with the father or the mother would not be in the best interests of these children. The record shows that these children were severely traumatized while in the care of their parents. The father's testimony indicates that he has neither taken responsibility for his own actions as a parent nor gained little, if any, insight into the parental skills needed to successfully raise these special needs children. The Court is unconvinced that the father will ever gain the perspective needed to parent these children. Indeed, it is due to the parents' actions and omissions over the years that these children have special needs caused by their traumatic home life.
By her own admission, the mother has testified that she has failed to take the necessary steps which would result in her reunification with the children. Not only did the mother not attend the programs contained in her reunification plan, there was also credible testimony that she has failed to maintain any contact with the children in the last two years. Her lack of action demonstrates to the Court that she is not prepared to parent these children and gives this Court no reason to believe that she will ever be capable of parenting these children.
Ms. F., the maternal grandmother, requests that the Court grant a suspended judgment to the respondent parents as a termination of parental rights adversely affects her petitions. She testified that she should have filed for custody of the subject children at an earlier date but believes that she has always been supportive of the children. The Court must decide whether the special needs of the children will be met, their physical and emotional needs will be met, and whether the person granted custody of the children will have the capacity to nurture them. Matter of the Adoption of A., 158 Misc 2d 760. Since coming into placement, and to accommodate their special needs due to their emotional and behavioral problems, the two older children have been placed at a residential treatment facility for over a year and the younger child has been placed in a therapeutic foster home. [*7]The evidence shows that while very well meaning, there is no indication that Ms. F. possesses the sufficient skills necessary to parent these special needs children. In addition to the difficulty of meeting the special needs of the children, the Court is concerned by Ms. F.'s own history with DSS. Ms. F.'s testimony that she never completed the court ordered services for the return of her own children, indicates that if granted custody she will not be equipped to manage the subject children's special needs. Therefore, the Court finds that granting Ms. F. custody, visitation, or modifying the current placement is not in the best interests of the subject children and her petitions are therefore denied.
Accordingly, this Court terminates the parental rights of the father and the mother. The Court also dismisses with prejudice the petitions for custody and visitation with the subject children and the petitions to modify the placement of the subject children filed by the maternal grandmother. The Court hereby commits the guardianship and custody of the subject children to the Department of Social Services and frees the children for adoption.
The County Attorney is directed to submit the instant order to the Court.