■ In the Matter of DESTINY O. KELLY O. et al., Respondents; BRYANT M., Appellant. (Proceeding No. 1.) In the Matter of BRYANT M., Appellant, v KELLY O., Respondent. (Proceeding No. 2.) [846 NYS2d 188]—

In a proceeding pursuant to Social Services Law § 383-c for the judicial surrender of a child in foster care and a related custody proceeding pursuant to Family Court Act article 6, the father appeals from an order of the Family Court, Suffolk County (Freundlich, J.), dated October 12, 2005, which denied his petition in proceeding No. 2, inter alia, for a change of custody of the subject child from the Suffolk County Department of Social Services to the child's paternal grandmother and a paternal aunt, and continued her placement with pre-adoptive foster parents.

Ordered that the order is affirmed, without costs or disbursements.

The father, who is incarcerated, petitioned the Family Court, inter alia, for a change of custody to place the subject child with her paternal grandmother and a paternal aunt until his release from jail. On October 7, 2005 the child's mother surrendered her parental rights in a related judicial surrender proceeding. Approximately 1½ hours later, the father was produced in court on his petition. His mother and sister also were present. The father was assigned counsel and, after spending approximately 45 minutes with counsel, off the record, the instant proceeding concluded without any testimony being heard, and the court scheduled a permanency hearing in a separate proceeding for the adoption of the child. On October 12, 2005 the Family Court, inter alia, dismissed the father's petition in the custody proceeding. The father appeals. We affirm.

The standard to be applied in a change of custody determination is the best interest of the child (*see Friederwitzer v Friederwitzer,* 55 NY2d 89, 95 [1982]; *Matter of Takylia B.,* 24 AD3d 759 [2005]). The Family Court had before it sufficient information to make a custody determination in the child's best interest (*see Friederwitzer v Friederwitzer, supra* at 94-95; *Matter of David B.,* 2 AD3d 725 [2003]). The subject child, who was 1½ years old when the Family Court made the challenged determination, has lived with her foster family since she was less than one month old. She also resides with her half brother, who was previously adopted into the same foster family. The foster parents are the only parents the child has ever known. It is in the child's best interest to continue that stable relationship, rather than be separated from her foster parents in order to live with her nonparent relatives (*see Matter of Peter L.,* 59 NY2d 513, 520 [1983]; *Matter of Takylia B., supra; Matter of Jahisha Jaysawnna J.,* 22 AD3d 383 [2005]; *Matter of Ella J. v Iva J.,* 4 AD3d 527 [2004]; *Matter of Violetta K. v Mary K.,* 306 AD2d 480, 481 [2003]).

We do not agree with the position of our dissenting colleague that we cannot determine, on this record, whether the Family Court properly dismissed the father's petition, inter alia, for a change of custody. Under the circumstances of this case, the Family Court properly dismissed the father's petition, without a full evidentiary hearing, since he failed to meet his burden of making some evidentiary showing sufficient to warrant such a hearing (*see Matter of Hom v Zullo,* 7 AD3d 624 [2004]; *Matter of Simmons v Budney,* 5 AD3d 389 [2004]; *Itchkow v Itchkow,* 275 AD2d 442 [2000]; *Matter of Coutsoukis v Samora,* 265 AD2d 482, 483 [1999]). Similarly, the father failed to make an evidentiary showing of, or even allege, a previously uncontemplated change of circumstances sufficient to warrant a hearing as to whether, under the totality of the circumstances, it would be in the child's best interest to live with her paternal grandmother and paternal aunt until her father's eventual release from jail (*see Neftleberg v Neftleberg,* 38 AD3d 864 [2007]).

In support of his petition in the custody proceeding, the father proffered only a handwritten note of unknown origin indicating that he wanted the child to reside with his mother and sister, who resided together in the same household. However, the paternal grandmother and paternal aunt were not parties to this proceeding, and did not formally apply for this relief (*see Nir v Nir,* 172 AD2d 651, 653 [1991]; *see also Matter of Smith v Wood,* 38 AD3d 561, 562 [2007]). Thus, it would have been error for the Family Court to award them custody (*id.*). In addition,

the father failed to plead or proffer any evidence as to how he planned to provide for the child, other than summarily expressing a desire to have her reside with his family members. Under these circumstances, there is ample support in the record to affirm the Family Court's dismissal of the father's petition in the custody proceeding without a hearing.

Consequently, contrary to our dissenting colleague's position, the absence from the record on this appeal of a transcript of any hearing does not require reversal. Moreover, the Family Court's reference to the permanency hearing scheduled for a future date in the separate adoption proceeding, during which the father would be entitled to be heard on the issue of the child's best interest (see Domestic Relations Law § 111-a; Social Services Law § 384-c), was not relevant to its determination of the instant petition. Skelos, Dillon and McCarthy, JJ., concur.

Spolzino, J.P. (dissenting and voting to reverse the order dated October 12, 2005, and remit the matter to the Family Court, Suffolk County, for further proceedings): Bryant M. is the father of Destiny O. The issue presented by this appeal is whether Bryant's petition in proceeding No. 2 (hereinafter Bryant's petition or the petition) for custody of or visitation with Destiny was properly dismissed. My colleagues conclude that the Family Court had before it enough information to determine Bryant's petition. As I see it, however, the one minute that Bryant spent before the Family Court was not sufficient to give the petition the serious consideration that it requires. I therefore dissent, respectfully.

Bryant submitted his petition on September 20, 2005. He was incarcerated at the time. The petition alleges, in addition to Bryant's paternity, only that Destiny was born on April 12, 2004, that the respondent Kelly O., who is Destiny's mother, obtained custody of Destiny approximately one year prior to the filing of the petition, that an order of protection against Bryant had been "annulled" since February 14, 2005, and that Bryant was requesting custody of Destiny, as well as visitation with her until his incarceration was concluded.

Bryant's petition in the custody proceeding was returnable in the Family Court, Suffolk County, on October 7, 2005. On the same day, the Family Court was scheduled to begin a trial in a proceeding to terminate Kelly's parental rights. The minutes of the proceedings on that day reflect that the two proceedings were called at the same time, but that the petition with respect to Kelly was heard first because Bryant had not yet been produced from jail. Rather than proceed to trial, however, Kelly submitted a judicial surrender petition and thus agreed to sur-

render Destiny to the custody of the Suffolk County Department of Social Services (hereinafter the DSS). The DSS then orally moved to withdraw its petition for the termination of Kelly's parental rights, and the Family Court granted the oral motion. After a short colloquy, in which Kelly admitted that Bryant was Destiny's father, and the Family Court acknowledged that paternity testing had established that fact with 99% certainty, the Family Court accepted Kelly's surrender at 9:34 A.M.

Bryant was brought into the courtroom at 11:04 A.M. The Family Court advised him that he had "a right to be heard on the best interest of the child consistent with the permanency plan," and that he had a right to counsel with respect to the petition. In response to that advice, Bryant requested that an attorney be appointed for him. The Family Court appointed Richard Gold as Bryant's counsel. Bryant left the courtroom with Gold one minute later. The transcript does not reflect their return. At 11:52 A.M., however, the Family Court noted that the first permanency hearing would be held on October 31, 2005 and the proceedings were concluded.

The record with which we have been presented by the Family Court on this appeal does not contain minutes from any other proceeding at which Bryant was present or any evidence or argument that was presented with respect to this matter. The only other minutes in the record are minutes of proceedings held on October 12, 2005, which reflect only the Family Court's statement that a decision had been rendered with respect to Bryant's petition, and that the proceeding was dismissed.

The decision to which the Family Court referred is dated October 12, 2005. It recites the fact that Bryant is Destiny's father, as was established in the proceedings on October 7, 2005. The decision further reflects the Family Court's determination, made "[a]fter hearing testimony and reviewing all the relevant petitions," that Bryant "summarily asserts that it would be in Destiny's best interest to live with his mother, the paternal grandmother, and aunt," that "[t]he County vehemently oppose[s] the application and asserts that [Bryant] has had no contact with the child," that "DSS had offered visits to [Bryant] with Destiny, but he never took advantage of such offer," that "Destiny is presently living in a pre-adoptive foster home with her half-sibling, Jordan, who has already been adopted by the family," and that "[t]he permanency plan for Destiny is [for her] to be adopted." None of these "facts," however, appear in the petitions in either of the proceedings before us and there is no mention, at least in the record that is before us, of any

answer that was submitted or any testimony or other evidence that was adduced at a hearing. On the basis of these "facts," the Family Court dismissed Bryant's petition, concluding that Bryant's request for custody would not be consistent with the permanency plan for Destiny, and that it was in Destiny's best interest to continue in foster care on a course toward adoption.

In my view, the absence of any record of the hearing to which the Family Court referred, and the lack of any evidence in the record to support the facts upon which the Family Court's determination was based, preclude our affirmance of the Family Court's order. "A biological parent has a right to the care and custody of a child, superior to that of others, unless the parent has abandoned that right or is proven unfit to assume the duties and privileges of parenthood, even though the State perhaps could find 'better' parents" (*Matter of Michael B.*, 80 NY2d 299, 309 [1992]). The fact that Bryant was incarcerated at the time he submitted his custody petition, while relevant, does not in itself foreclose the possibility that awarding him custody may nevertheless be in Destiny's best interest, if not now, then in the future (*see Matter of Gregory B.*, 74 NY2d 77, 88-89 [1989]; *Matter of Depuy-Wade v Wade*, 298 AD2d 655 [2002]; *Matter of Latasha F.*, 251 AD2d 1005, 1006 [1998]).

It may be that Bryant has abandoned his right to custody of Destiny, but there is nothing in this record to support that conclusion. It is also entirely possible that Bryant waived any right to contest the parenting plan that calls for Destiny's adoption, but that is not established by the record either. Even if Bryant were entitled only to contest the issue of what is in Destiny's best interest, however, as the Family Court advised him, a hearing was required with respect to that issue (*see Matter of Ling Da Chen v Yue Hua Zhou*, 39 AD3d 753 [2007]). The record before us does not reflect that such a hearing was ever held. The record before us also does not reflect, at least insofar as I have been able to discern, the information that my colleagues find to have been a sufficient predicate for the Family Court's determination as to the best interest of Destiny. I would therefore reverse the order of the Family Court, reinstate the petition, and remit the matter to the Family Court for further proceedings.