■ In the Matter of SEASIA D. KAREEM W., Appellant; FAMILY FOCUS ADOPTION SERVICES, INC., et al., Respondents. In the Matter of KAREEM W., Appellant, v FAMILY FOCUS ADOPTION SERVICES, INC., et al., Respondents. In the Matter of KAREN S., Appellant, v FAMILY FOCUS ADOPTION SERVICES, INC., et al., Respondents. [905 NYS2d 643]—

In an adoption proceeding pursuant to Domestic Relations Law article 7, and two related custody and visitation proceedings pursuant to Family Court Act article 6 and Domestic Relations Law § 72, (1) the biological father, Kareem W., appeals from an order of the Family Court, Queens County (Sherman, J.), dated February 9, 2009, which, upon a decision of the same court dated February 2, 2009, made after a hearing, granted the petition to allow Mr. and Mrs. Anonymous to adopt the subject child, and (2) Kareem W. and the biological paternal grandmother, Karen S., appeal from an order of the same court dated August 12, 2009, which granted the motion of the adoptive parents to dismiss their petitions for custody and/or visitation.

Ordered that the orders are affirmed, without costs or disbursements.

In a prior appeal in the subject adoption proceeding, the Court of Appeals determined that there was not legally sufficient evidence to support the Family Court's findings, affirmed by this Court (*see Matter of Seasia D.*, 46 AD3d 878 [2007]), that the extrajudicial surrender by the birth mother was invalid, and that the biological father, Kareem W., who intervened in the adoption proceeding, met the criteria to establish himself as a father whose consent was required before the adoption could proceed (*see Matter of Seasia D.*, 10 NY3d 879 [2008], *cert denied sub nom. Kareem W. v Anonymous*, 555 US —, 129 S Ct 629). Accordingly, the Court of Appeals reinstated the adoption petition and remitted the matter to the Family Court, Queens County, for further proceedings on the petition (*id.* at 880).

Upon remittitur, the Family Court held a hearing on December 22, 2008, at which, pursuant to Domestic Relations Law § 111-a, it afforded Kareem W. an opportunity to present evidence relevant to the best interests of the subject child. Kareem W. testified that he could not remember the last time he had seen the subject child, but believed that it was in January 2007. He had stopped visiting the child when the fees for the supervised visitation were no longer paid through the Family Court. Further, he could not remember how many times he had visited with the child during the period when the visits were court-funded, but he admitted that he had missed at least half of them. Kareem W. asserted that it was in the child's best interests to have custody awarded to him because the paternity test showed that the child "belong[ed]" to him. When asked what provisions he would make for the child if custody were awarded to him, Kareem W. responded that he would "take care" of the child and, if he could not, he was certain one of his family members, who lived "all over," would.

The biological paternal grandmother, Karen S., also testified briefly at the hearing. She had visited the subject child with her son only three times, had made no attempts to visit or contact the child on her own, and acknowledged that the child would not recognize her or know who she was.

In a decision dated February 2, 2009, the Family Court reasoned that it would be in the child's best interests to be adopted by Mr. and Mrs. Anonymous (hereinafter the adoptive parents), with whom she had been living since birth, and who had provided a stable and loving home in which she thrived. The Family Court observed that, at the hearing, Kareem W. had focused almost entirely on his own frustration and sense of unfairness with the "process," his anger at the pre-adoptive parents, and his sense of "entitlement" to the child. The Family Court found that Kareem W. barely acknowledged that the child had interests which were separate from his own, and never addressed them. In accordance with its decision, in an order dated February 9, 2009, the Family Court granted the petition to allow the adoptive parents to adopt the subject child.

While the adoption proceeding was pending, on December 5, 2008, Kareem W. and Karen S. (hereinafter together the appellants) each filed a petition for custody of and/or visitation with the subject child. Following the issuance of the order granting the adoption petition, the adoptive parents moved to dismiss the custody and/or visitation petitions on the ground that neither Kareem W. nor Karen S. had standing to seek custody or visitation. The Family Court granted the motion in an order dated August 12, 2009. We affirm both orders.

Contrary to the appellants' contention, the validity of the biological mother's extrajudicial surrender has been determined by the Court of Appeals (see Matter of Seasia D., 10 NY3d at 880), and thus may not be relitigated.

Also contrary to the appellants' contention, Kareem W. does not have a protected constitutional interest established "simply by biology. The unwed father's protected interest requires both a biological connection and full parental responsibility" (Matter of Raquel Marie X., 76 NY2d 387, 401 [1990], cert denied sub nom. Robert C. v Miguel T., 498 US 984 [1990]; see Lehr v Robertson, 463 US 248, 262 [1983]). In the case of a child placed for adoption at birth, where the father could have had no more than a biological connection to the child, and there was, thus, no chance for a custodial relationship, the Constitution protects his "opportunity to develop a relationship with his infant son or daughter" (Matter of Robert O. v Russell K., 80 NY2d 254, 262 [1992]; see Matter of Raquel Marie X., 76 NY2d 387, 401-402

[1990]). However, this right only exists for the unwed father "who manifests his willingness to assume full custody of the child and does so promptly" (*Matter of Robert O. v Russell K.,* 80 NY2d at 262). Here, the Court of Appeals already has determined that Kareem W. failed to demonstrate such willingness during the crucial six-month period preceding the child's placement with the adoptive parents (*see Matter of Seasia D.,* 10 NY3d at 880-881; *cf. Matter of Raquel Marie X.,* 76 NY2d 387 [1990]). Accordingly, Kareem W. was entitled only to notice of the adoption proceeding and an opportunity "to present evidence to the court relevant to the best interests of the child" (Domestic Relations Law § 111-a [3]; *see Matter of Raquel Marie X.,* 76 NY2d at 401-402; *Matter of Female Infant F.,* 191 AD2d 437, 439 [1993]). He was given such notice and opportunity here. Having heard the evidence presented, the Family Court determined that it was in the child's best interests for the adoption to go forward. We find no basis on this record to disturb that determination.

Upon the adoption of the subject child, following the determination that Kareem W.'s consent to the child's adoption was not required, his parental rights ceased, and he lacked standing to prosecute a custody and visitation proceeding regarding the subject child (*see* Domestic Relations Law § 117 [1] [a]; *Matter of Kevin W. v Monique T.,* 38 AD3d 672, 673 [2007]; *Matter of Morgaine JJ.,* 31 AD3d 931, 933 [2006]). While we recognize that Domestic Relations Law § 117 should not be applied literally where to do so would not serve the best interests of the child, literal application is appropriate in this case, "where there is a need to prevent unwanted intrusion by the child's former biological relatives to promote the stability of the new adoptive family" (*Matter of Jacob,* 86 NY2d 651, 665 [1995]; *see Matter of Peter Z. v Nilda C.,* 46 AD3d 696, 697 [2007]). Thus, the Family Court properly granted that branch of the adoptive parents' motion which was to dismiss Kareem W.'s petition for custody and/or visitation.

The Family Court also properly determined that Karen S. lacked standing to seek visitation with the subject child. Domestic Relations Law § 72 (1) provides a procedural mechanism for grandparents to acquire standing to seek visitation with a minor grandchild (*see Matter of E.S. v P.D.,* 8 NY3d 150, 157 [2007]). A grandparent has standing to seek visitation when either parent is deceased or where "conditions exist which equity would see fit to intervene" (Domestic Relations Law § 72 [1]). A court should confer standing, "in its discretion, only after it has examined all the relevant facts" (*Matter of Emanuel S. v Joseph*

*E.*, 78 NY2d 178, 182 [1991]). An essential part of the standing inquiry is "the nature and extent of the grandparent-grandchild relationship. It is not sufficient that the grandparents allege love and affection for their grandchild. They must establish a sufficient existing relationship with their grandchild, or in cases where that has been frustrated by the parents, a sufficient effort to establish one, so that the court perceives it as one deserving the court's intervention. If the grandparents have done nothing to foster a relationship or demonstrate their attachment to the grandchild, despite opportunities to do so, then they will be unable to establish that conditions exist where 'equity would see fit to intervene' " (*id.* at 182-183, quoting Domestic Relations Law § 72). In light of the testimony that Karen S. had seen the subject child only three times during the child's visitation with Kareem W., and had never made any independent efforts to visit or communicate with the child, who is now six years old, the Family Court properly declined to confer standing.

In addition, insofar as Karen S. seeks custody of the subject child, "a nonparent relative takes no precedence for custody over the adoptive parents selected by an authorized agency" (*Matter of Pryor v Lindsay*, 60 AD3d 859, 859 [2009]; *see Matter of Peter L.*, 59 NY2d 513, 520 [1983]; *Matter of Linda S. v Krishnia S.*, 50 AD3d 805, 806 [2008]; *Matter of Ella J. v Iva J.*, 4 AD3d 527, 528 [2004]). Thus, the Family Court properly granted that branch of the adoptive parents' motion which was to dismiss Karen S.'s petition.

The appellants were not entitled to a hearing on the visitation issue, as the information before the Family Court enabled it to undertake a comprehensive independent review of that issue (*see Matter of Lynda D. v Stacy C.*, 37 AD3d 1151 [2007]; *Matter of Marks v Cascio*, 24 AD3d 556, 557 [2005]; *Matter of Horowitz v Kelly*, 300 AD2d 659 [2002]; *cf. Matter of Female Infant F.*, 191 AD2d 437 [1993]). Mastro, J.P., Florio, Belen and Chambers, JJ., concur.