Matter of El v Administration for Children's Servs.-Queens (2018 NY Slip Op 01466)





Matter of El v Administration for Children's Servs.-Queens


2018 NY Slip Op 01466


Decided on March 7, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

L. PRISCILLA HALL, J.P.
JEFFREY A. COHEN
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2016-08815
 (Docket No. V-6503-14)

[*1]In the Matter of Candace El, appellant,
v
Administration for Children's Services-Queens, et al., respondents, Heart Share Human Services of New York, respondent-respondent.


Janet L. Brown, Jamaica, NY, for appellant.
Wingate, Kearney & Cullen, LLP, Brooklyn, NY (Kreuza Ganolli of counsel), for respondent-respondent.
Seymour W. James, Jr., New York, NY (Tamara A. Steckler and Diane Pazar of counsel), attorney for the child.



DECISION & ORDER
Appeal from an order of the Family Court, Queens County (Connie Gonzalez, J.), dated July 27, 2016. The order, after a hearing, dismissed the maternal grandmother's petition for custody of the subject child, with prejudice.
ORDERED that the order is affirmed, without costs or disbursements.
Following the birth of the subject child, Tabitha, she was taken home from the hospital by her maternal grandmother, who already had custody of the mother's son, Justin. Although the maternal grandmother had intended to petition for custody of Tabitha, as she had previously done for Justin, employees of the Administration for Children's Services visited her home and convinced her to become certified as a kinship foster mother, so that she could receive funding to help pay for items such as formula and diapers. The maternal grandmother successfully became certified as a foster parent in New York.
However, when Tabitha was approximately five months old, the maternal grandmother decided to relocate to Pennsylvania. Since she did not have custody of Tabitha, the maternal grandmother could not take Tabitha with her. The foster care agency, Heart Share Human Services of New York (hereinafter the agency), advised the maternal grandmother that she could obtain a transfer of Tabitha to her in Pennsylvania pursuant to the Interstate Compact on the Placement of Children (see Social Services Law § 347-a; hereinafter ICPC), which would allow her to continue to be Tabitha's foster parent in Pennsylvania upon becoming qualified as a foster parent in Pennsylvania.
In the interim, the maternal grandmother arranged for Tabitha to be placed in the New York home of her son and his family, pending certification of that home as a kinship foster home for Tabitha. The son was unable to be qualified as a foster parent, and Tabitha was placed with her [*2]current foster mother in May 2012, when she was nine months old. Tabitha has resided continually with her foster mother since then. Although the maternal grandmother made efforts to complete the ICPC application process and to become qualified as a foster parent in Pennsylvania, she encountered difficulties that prolonged the process, such that by the time she received approval in June 2013, the agency determined that she had failed to maintain sufficient contact with Tabitha to transfer the child to her care.
In April 2013, the agency filed a petition to terminate the mother's parental rights and free Tabitha for adoption by the foster mother. Beginning in 2014, the maternal grandmother began having regular visitation with the child, which progressed, under a Family Court order, to include extended visits of two weeks' duration. In April 2014, the Family Court determined that the mother had abandoned Tabitha, and that the man identified by the mother as the father had been given notice of the proceeding and there is no one else whose consent would be required for Tabitha to be adopted. The court adjourned the matter for a dispositional hearing.
Thereafter, in April 2014, the maternal grandmother filed a petition for custody of Tabitha. Following a combined dispositional and custody hearing, the Family Court dismissed the maternal grandmother's custody petition with prejudice. The maternal grandmother appeals.
The standard to be applied in a change of custody determination is the best interests of the child (see Matter of Chastity Imani Mc., 66 AD3d 782, 783; Matter of Pryor v Lindsay, 60 AD3d 859; Matter of Destiny O., 44 AD3d 951, 952). " Social Services Law § 383(3) gives preference for adoption to a foster parent who has cared for a child continuously for a period of 12 months or more, while members of the child's extended biological family are given no special preference with regard to custody'" (Matter of Chastity Imani Mc., 66 AD3d at 783, quoting Matter of Pryor v Lindsay, 60 AD3d 859, 859; see Matter of Peter L., 59 NY2d 513; Matter of Takylia B., 24 AD3d 759). Thus, a nonparent relative takes no precedence for custody over the adoptive parents selected by an authorized agency (see Matter of Peter L., 59 NY2d 513; Matter of Chastity Imani Mc., 66 AD3d at 783; Matter of Pryor v Lindsay, 60 AD3d 859).
Here, the totality of the circumstances and the evidence submitted at the hearing supported the Family Court's determination to dismiss the maternal grandmother's custody petition with prejudice. It was in the child's best interests to remain in the preadoptive home of the foster mother, where she had resided continuously since the age of nine months, and where she had strongly and lovingly bonded with the foster mother and the foster mother's extended family.
HALL, J.P., COHEN, BARROS and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court